## DENVER & R. G. R. CO. v. GRAND COUNTY.

No. 3088.   Decided December 21, 1917.   (170 Pac. 74.)

1. COUNTIES—TAXATION—DEPENDENT MOTHERS' ACT—"ALL PUR-
   POSES OF CORPORATION"—"PUBLIC PURPOSES." Under Const. art.
   13, section 5, giving counties, etc., the power to assess and collect
   taxes "for all purposes of such corporation," the quoted phrase is
   synonymous with "public purposes," and the Legislature, by the
   enactment of Laws 1913, c. 90 (Dependent Mothers' Act), having
   determined that surrounding children of tender years with care and
   nurture of their natural protectors, by appropriating public funds
   for the partial support of mothers who are dependent upon their
   own efforts for the support of their children, is within the public
   policy of the state, the Supreme Court would not be justified in
   declaring the act invalid or that the funds used for the purposes
   of the act are not used for a "public purpose."   (Page 299.)

2. CONSTITUTIONAL LAW—MOTHERS' PENSIONS—STATUTE—RESOLVING
   DOUBTS IN FAVOR OF VALIDITY. The constitutionality of Laws 1913,
   c. 90, known as the Dependent Mothers' Act, being doubtful, doubts
   will be resolved in favor of its constitutionality.[1]   (Page 299.)

3. COUNTIES—TAXATION—AMOUNT—LIMITATIONS—DEPENDENT MOTH-
   ERS' ACT. Laws 1913, c. 90, authorizing the county commissioners
   to provide funds in an amount sufficient but not in excess of $10,000
   for the partial support of mothers dependent on their own efforts
   for the maintenance of their children, must be construed as authoriz-
   ing the levy of an additional tax on the property in the county,
   although such levy would increase the total taxes in excess of the
   maximum allowed by Comp. Laws 1907, section 2593, providing that
   taxes levied shall not exceed five mills on the dollar for general
   county purposes, one-half mill on the dollar additional for care,
   maintenance, and relief of the indigent sick and otherwise dependent
   poor, and four mills on the dollar for district school purposes.
   (Page 303.)

---

[1] *Rio Grande Lumber Co.* v. *Darke*, 50 Utah 114, 167 Pac. 241.

Appeal from District Court of Grand County, Seventh District; *Hon. A. H. Christensen,* Judge.

Action by the Denver & Rio Grande Railroad Company against Grand County.

Judgment for plaintiff.   County appeals.

REVERSED and remanded.

*Knox Patterson* for appellant.

*Van Cott, Allison & Riter* for respondent.

## APPELLANT'S POINTS

"The power to tax must be conferred in terms, or must result by implication from the language made use of in the law." (Cooley on Taxation 275, citing numerous authorities.)

"Where, in creating a school district for the building and support of a High School, it was held a power to tax had been given though it was not in terms mentioned." *(Fisher* v. *People* 84 Ill. 491.)

"The legislative branch of the government has the exclusive power of taxation, but may delegate it, to municipal corporations. When such corporations are created, the power of taxation, though generally conferred in express terms, may be held to exist by necessary fair intendment. When, for example, such corporations have, in order to execute public work, been vested with authority to borrow money or incur an obligation, they have, unless the contrary appears, the power to levy a tax to raise revenue wherewith to pay the money or discharge the obligation, without any special mention that such power is granted." (Dillon's Municipal Corporations, Fourth Edition, page 900, citing *United States* v. *New Orleans,* 98 U. S. 381, *Peoria, D. & E. Ry.* v. *Scott,* 116 Ill. 401.)

### RESPONDENT'S POINTS

"It is implied in all definitions of taxation that taxes can be levied for public purposes only. Differences of opinion frequently arise concerning the power to impose taxation in particular cases, but all writers who treat the subject theoretically and all jurists agree in the fundamental requirement that the purpose shall be public, and they differ, when they differ at all, upon the question whether the particular purpose proposed is within the requirement." Cooley on Taxation, p. 181.

"The power to tax being legislative, there must be distinct authority of law for every levy upon the people under that power." Cooley Taxation, 3d Ed. p. 546.

"The municipal corporations of a state, having no inherent power to tax, must take such power as is conferred. This is fundamental." Id. p. 554.

Two Utah cases holding that legislative authority is essential to a tax are:

*Centennial Eureka Mining Company* v. *Juab*, 62 Pac. 1024, 22 Utah 395; *Mercur Gold Mining & Milling Co.* v. *Spry*, 52 Pac. 382, 16 Utah 222.

Where a tax limit is fixed either before or after a special levy is authorized, unless the act authorizing the special levy expressly amends or repeals the act fixing the limit, the special levy is illegal if it exceeds the limit fixed. (*Wells* v. *McNeil*, 48 So. 184, 1909 Miss.)

GIDEON, J.

Respondent seeks to recover the sum of $912.66, claimed to have been unlawfully collected in the year 1914 by appellant under an act of the Legislature of 1913, c. 90 (Laws Utah 1913), known as the "Dependent Mothers' Act."

The cause was heard by the court upon an agreed statement of facts. From such statement it appears that the railroad company is a corporation existing under the laws of the states of Utah and Colorado, and owns and operates a main line of railway extending from Ogden, Utah, in a southeasterly direc-

tion through several counties of Utah, including Grand County, and thence into Colorado; that Grand County is a duly organized county of the state of Utah, with authority to assess, levy, and collect taxes in such manner and for such purposes as are or may be provided by law. It is further stipulated that in the year 1913 appellant, through its proper officers, assessed, for the purposes of taxation, all lines of railway, rolling stock, and franchises connected with and appurtenant to the railroad of respondent located in said Grand County in the sum of $928,652, and that that amount was duly apportioned among the various taxing districts in the county in which the property and franchises of the respondent are located; that in said year 1913 the appellant, through its proper officers, levied what is termed a dependent mothers' tax upon all the property of respondent situate in said county of one mill on each dollar of assessed valuation, and that the same was entered upon the assessment rolls of said county, and that the dependent mothers' tax so levied amounted to the sum of $912.66; that a demand was made upon respondent for the payment of the same. It appears further in the stipulation that in addition to the said dependent mothers' tax the appellant, through its proper officers, levied other taxes for said year against the property of respondent as follows: Five mills on the dollar for general county purposes, four mills on the dollar for county school purposes, and one-half mill on the dollar for the care, maintenance, and relief of the indigent sick and otherwise dependent poor. Further, that on or about the 16th day of November, 1914, respondent paid the dependent mothers' tax under written protest to the county treasurer of Grand County, together with $100.64 accrued interest on the same and $2.75 costs of advertisement, sale, and redemption certificate.

Conclusions of law were made from the foregoing agreed facts that Grand County was without authority to levy such dependent mothers' tax and that the tax was illegal and void; that the officers of the county charged with the duty to enter tax levies and collect the same were without power or authority to enter such levy on the assessment rolls or to assess

respondent's property with such tax or to collect taxes from respondent based on such levy. Judgment was entered in favor of respondent for the amount paid, together with the accumulated interest and costs of the action. From that judgment Grand County appeals to this court.

The sections of the statute in question (Laws 1913, c. 90), so far as material here, are as follows:

"Section 1. It shall be the duty of the county commissioners of each county in this state, and they are hereby authorized and empowered to provide funds in an amount sufficient to meet the purposes of this law, but not exceeding in any one year the sum of ten thousand dollars, such funds to be expended for the partial support of mothers who are dependent upon their own efforts for the maintenance of their children.

"Sec. 2. The allowance to each of such mothers shall not exceed ten dollars a month when she has but one child under the age of fifteen years, and if she has more than one child under the age of fifteen years, it shall not exceed the sum of ten dollars a month for the first child and five dollars a month for each of the other children under the age of fifteen years.

"Sec. 3. Such allowance shall be made by the county commissioners, except in counties having a population of one hundred and twenty-five thousand or more, the authority, power and duty of determining upon allowance to be made under the provisions of this act shall devolve upon and be exercised by the juvenile judge of the district in and for such counties. Such allowance shall be made only upon the following conditions: (1) The child or children for whose benefit the allowance is made must be living with the mother of such child or children. (2) The allowance shall be made only when in the absence of such allowance a mother would be required to work regularly away from her home and children, and when by means of such allowance she will be able to remain at home with her children. (3) The mother must, in the judgment of the county commissioners or juvenile court, be a proper person morally, physically and mentally, for the bringing up of her children. (4) Such allowance shall, in the judgment of the county commissioners or juvenile court, be

necessary to save the child or children from neglect. (5) No persons [person] shall receive the benefit of this act who shall not have been a resident of the county in which such application is made for at least two years next before the making of such application for such allowance.

"Sec. 4.   Whenever any child shall reach the age of fifteen years, any allowance made the mother of such child for the benefit of such child shall cease.   The county commissioners or juvenile court may, in their discretion, at any time before such child reaches the age of fifteen years, discontinue or modify the allowance to any mother and for any child.

"Sec. 5.   Should the fund herein authorized be sufficient to permit an allowance to only a part of the persons coming within the provisions of this law, the county commissioners or juvenile court shall select those cases in most urgent need of such allowance."

Respondent contends that such statute authorizing the assessment, levy, and collection of a dependent mothers' tax is unconstitutional and void for the reason that it takes private property for other than a public purpose; that the act is discriminatory and favors a class, and is there- 1, 2 fore in violation of article 14, section 1, of the federal Constitution, and of article 1, section 7, of the Utah Constitution.   Respondent also contends that the tax is illegal and without authority, as being in excess of the taxing limit fixed by Comp. Laws 1907, section 2593.

We shall consider these contentions in the order named:

By article 6, section 1, of the Constitution, the legislative power of the state is vested in the Legislature thereof.   It is provided by article 13, section 3, of the Constitution, that the Legislature shall provide by law a uniform and equal rate of assessment, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property, etc.   Section 5 of the same article gives to counties, cities, towns, and other municipal corporations the power to assess and collect taxes for all purposes of such corporations, and is in the following language:

"The Legislature shall not impose taxes for the purpose of

any county, city, town or other municipal corporation, but
may by law vest in the corporate authorities thereof, respec-
tively, the power to assess and collect taxes for all purposes
of such corporation."

It is conceded that the phrase, "for all purposes of such
corporation," includes every object or purpose for which a
tax may be legally levied. In other words, the expression is
synonymous with the phrase generally used by text-writers
and courts, "public purposes." We have, then, to determine
in this case whether the object for which the tax in question
was levied, as set out in the act, can be upheld as for a "public
purpose."

The determination of that question is not without difficulty.
The authorities on such or like questions are not in harmony.
What may or may not be termed a "public purpose" is not
easily defined, and no definition has as yet been framed that
will fit all conditions or provisions of legislation. That the
objects of the act now under consideration were beneficent,
and in the judgment of the lawmakers to the best interests of
the state, will not be questioned; and yet the determination of
the legality or constitutionality of the act must be based upon
some recognized rule of construction that would authorize the
Legislature to appropriate the public funds for the purposes
mentioned in the act. We are not prepared to hold that the
Legislature might not provide for the appropriation of public
funds for the purposes stated. To do so would be to hold that
the Legislature has exceeded its authority, as that authority
is limited by the common acceptation of the meaning of the
phrase "public purpose." It will be conceded, we take it,
that the proper rearing and bringing up of children, their
education, their moral welfare, can all be subserved better by
giving to such children the companionship, control, and
management of their mothers than by any other system de-
vised by human ingenuity. The object of the act is to provide
means whereby mothers who are otherwise unable may be
enabled to give such attention and care to their children of
tender years as their health, education, and comfort require.
The act further provides that no such money shall be appro-

priated or given unless the mother is a fit person morally and physically to be intrusted with the rearing of young children, and that only during the years when the children are unable to determine right from wrong or to earn a livelihood. The act having for its object the better care and training, mental and physical, of children who are to become the citizens of the state, would at least leave the constitutionality of such act doubtful, and it is the duty of courts in determining the constitutionality of any act to resolve every doubt in favor of its constitutionality. We are not prepared to hold that the act, in effect, does not define and declare a policy of the state, nor that it is not within the province of the Legislature to so define and declare a state policy. Having in mind the public welfare by assisting in surrounding children of tender years with home associations, with the care and nurture of their natural protector, the mother, the Legislature, by this act, has determined that to be a policy of the state. Such being the object of the act, this court would not be justified in declaring the act invalid and that the funds so used are not used for a public purpose.

The principle or rule that should guide the court in determining the constitutionality of any legislative act is lucidly and well stated by the Supreme Court of Missouri in *Ex parte Loving,* 178 Mo. at page 203, 77 S. W. at page 509, quoting from other decisions of that court in the following language:

"It is the duty of the courts to uphold a legislative act unless it plainly and clearly violates the Constitution, and, if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation should be adopted. 'A legislative intent to violate the Constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction.' Endlich on the Interpretation of Statutes, section 178. It is our duty to uphold the act unless it plainly and clearly violates the fundamental law of the state, and if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation should be adopted."

In *Booth* v. *Town of Woodbury,* 32 Conn. 118, it is said:

"In the first place if it be conceded that it is not competent for the legislative power to make a gift of the common property, or of a sum of money to be raised by taxation, where no possible  *  *  *  benefit,

direct or indirect, can be derived therefrom, such exercise of the legislative power must be of an extraordinary character to justify the interference of the judiciary; and this is not that case. Second, if there be the least possibility that making the gift will be promotive in any degree of the public welfare, it becomes a question of policy, and not of natural justice, and the determination of the Legislature is conclusive. And such is this case. Such gifts to unfortunate classes of society, as the indigent blind, * * * colleges or schools, or grants of pensions, swords, or other mementoes for past services, involving the general good indirectly and in slight degree, are frequently made and never questioned.''

In *Broadhead* v. *Milwaukee,* 19 Wis. 624, 88 Am. Dec. 711, the Supreme Court of that state said:

"To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—so clear and palpable as to be perceptible by every mind at the first blush.''

To the same effect is the decision of this court in the recent case of *Rio Grande Lumber Co.* v.*Darke,* 50 Utah, 114, 167 Pac. 241, wherein Mr. Justice Thurman, speaking for the court, says:

"It is a fundamental rule in construing a statute, when its validity is challenged on constitutional grounds, that the courts will not consider mere questions of policy or expediency. These are matters of legislation, and belong to the legislative department of government. * * * For the judiciary to dictate the matters of policy and expediency and seek to nullify acts of the lawmaking body, because it conceives that such acts are impolitic or unnecessary, would be just as flagrant a violation of the Constitution as would be an act of the Legislature which would deprive a person of life, liberty, or property without due process of law.''

It may be contended that to leave the power to levy taxes for the purposes mentioned in this act is removing practically every limitation upon the taxing power of the Legislature. That does not necessarily follow; but should the time ever come when the electors, through ignorance or want of sufficient interest in their public officers, fail to check any extravagance or waste of the public funds through acts of their chosen representatives in the Legislature, then any limitation that the court might attempt to throw around the right of the tax-

ing power would prove abortive and be easily evaded. The chief safeguard against extravagance or marked delinquency of any system must be found in the knowledge and rectitude of the people, and in the honesty and intelligence of their representatives.

We must, therefore, while admitting the question is not free from doubt, resolve that doubt in favor of the power of the legislature to authorize the expenditure as provided in the act in question.

What has been said above answers the second objection urged by respondent against the validity of the tax in question.

The further contention that the tax is excessive, as being in excess of the maximum allowed by Comp. Laws 1907, section 2593, cannot be sustained. That section, which    **3** has been in force in this state practically since statehood, reads:

"The board of county commissioners of each county must, between the first Monday in July and the second Monday in August in each year, fix the rate of county taxes, and designate the number of mills on each dollar of valuation of property for each fund, and must levy taxes upon the taxable property of the county not exceeding five mills on the dollar for general county purposes, and may levy a tax not exceeding one mill on the dollar additional for the care, maintenance, and relief of the indigent sick and otherwise dependent poor, and not exceeding four mills on the dollar for district school purposes."

It is a matter of common knowledge, and one that the Legislature must have known and had in mind when it enacted the law complained of, in 1913, that every county in the state needed and had been levying a tax for the purposes mentioned in section 2593, supra, up to the full limit permitted thereby. Therefore it must have been the intention of the Legislature when it enacted the law directing the county commissioners of each county to provide funds, etc., that such commissioners should provide such funds by the only legal means within their power, namely, levying an additional tax on the property

in such county. If any other view be taken, then we must assume that the Legislature intended the act in question to be stillborn and of no effect. That we may not do. The only way, therefore, it may be given effect is to treat it as the last expression of the Legislature upon the subject treated in section 2593, supra. Instead of expressing the limitation in mills or in fractions thereof, the amount that can be raised by taxation for the purposes mentioned in the act is specifically limited. There is therefore a limitation beyond which the county commissioners may not go, precisely as contemplated in section 2593, supra.

We are not to be understood as holding that any act of the Legislature authorizing the expenditure of public funds for every purpose could or should be permitted by the courts. We are simply determining in this case that the question is so close and not free from difficulty of determination that we are resolving that doubt in favor of the policy established by the Legislature, and we are not expressing any opinion as to the wisdom or desirability of such policy. That is peculiarly within the province of the Legislature, and any error of law that leads to extravagance, or fraud, or imposition upon the public can be easily corrected by the people themselves through their representatives.

We are not unmindful that many courts of the highest authority, and whose judgments are entitled to great weight and respect, have stated rules or elucidated principles which might, by analogy, seem to hold contrary to the views herein expressed; but considering the purposes of the act, and the safeguards thrown around the appropriation of the funds, we do not feel justified in holding it beyond the power of the Legislature.

It follows from the foregoing that the case should be reversed and remanded to the district court, with directions to make conclusions of law in accordance with this opinion and enter judgment dismissing the complaint. Such is the order. Appellant to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.