# STARTUP v. HARMON et al., Com'rs of Utah County.

No. 3715.    Decided December 3, 1921.    Rehearing Denied January 12, 1922.   (203 Pac. 637.)

1.  MANDAMUS—LIES TO COMPEL SUPERVISORS TO PROVIDE MOTHERS PENSION FUND. Comp. Laws 1917, § 3960, as amended by Laws 1919, c. 77, making it the duty of the county commissioners to provide annually funds for the partial support of widowed mothers, is plainly mandatory, and imposes a positive duty on the supervisors to provide such funds, though they have discretion as to the amount necessary, so that they can be compelled to do so by mandamus.[1]

2.  INFANTS—PROVISION FOR INDIGENT AND DEPENDENT POOR, INCLUDING WIDOWED MOTHERS, HELD NOT TO COMPLY WITH THE LAW PROVIDING FUNDS FOR SUCH MOTHERS. A county's provision for its indigent and dependent poor, including widowed mothers dependent on their own efforts to maintain their children, does not comply with Comp. Laws 1917, § 3960, as amended by Laws 1919, c. 77, requiring that the county provide a fund to be expended exclusively for partial support of such mothers; the statute not intending that they should be classified with paupers.

3.  MANDAMUS—MAY ISSUE TO COMPEL FUTURE LEVY OF TAX. Mandamus may issue to compel the supervisors of a county to set aside a fund necessary for the partial support of widowed mothers, though it is too late to levy a tax for that purpose for the current year, and not yet time to make the levy for the next year, where the return of the supervisors does not show an intention to comply with the statute during the next year.

4.  MANDAMUS—RESIDENT AND TAXPAYER NOT "BENEFICIALLY INTERESTED" IN MOTHERS' PENSION FUND. Within Comp. Laws 1917, § 7392, authorizing mandamus on application of the party beneficially interested, the term "beneficially interested" requires the applicant to have some peculiar interest, separate and distinct from that of the community in general, so that a resident and taxpayer of a county who has no interest except as such cannot maintain mandamus to compel the supervisors to set aside a fund required by statute for the partial support

---

[1] *Industrial Commissioners of Utah* v. *Daly Min. Co.*, 51 Utah, 602, 172 Pac. 301.

of widowed mothers, but such proceedings can only be maintained by a member of the class for whose relief the law was enacted, or by a person upon whom a legal demand might be made to furnish support for such widowed mother or her children.[2]

CORFMAN, C. J., dissenting.

Original proceeding in mandamus by George A. Startup against Jesse Harmon and others, as County Commissioners of Utah County.

PEREMPTORY WRIT DENIED.

A. W. Turner, of Provo, and E. R. Christensen and J. C. Wood, both of Salt Lake City, for plaintiff.

M. R. Straw, Co. Atty., of Provo, for defendants.

THURMAN, J.

This is an original proceeding in mandamus praying that a peremptory writ of mandate issue, commanding the defendants, as county commissioners of Utah County, to provide annual funds, not exceeding $10,000 in any one year, to be expended for the partial support of widowed mothers who are dependent upon their own efforts for the maintenance of their children. Plaintiff prays for such other judgment or order as may be legal and proper.

The application for the writ is founded upon the provisions of Comp. Laws Utah 1917, § 3960, as amended in chapter 77, Sess. Laws Utah 1919, which section reads as follows:

"It shall be the duty of the county commissioners of each county in the state, and they are hereby authorized and empowered to provide, annually, funds in an amount sufficient to meet the purpose of this law, but not exceeding in any one year the

[2] Denver & R. G. R. R. v. Grand County, 51 Utah, 294, 170 Pac. 74, 3 A. L. R. 1224; Crockett v. Board of Education of Carbon Co. School Dist., 58 Utah, 303, 199 Pac. 158.

Mandamus. ·Writ denied

sum of $10,000.00; provided, that in the counties containing a population of 100,000 or more the amount of such funds shall be $20,000.00, annually, such funds to be expended for the partial support of widowed mothers who are dependent upon their own efforts for the maintenance of their children. No part of the funds above provided for shall be expended for administration or purposes other than the partial support of widowed mothers."

The complaint, in substance, alleges that the plaintiff is a resident and taxpayer in Provo City, Utah county, state of Utah, and is the owner of both real and personal property therein; that the defendants are the duly elected, qualified, and acting county commissioners of Utah county; that said county contains a population of less than 100,000 persons; that there are residing in said county numerous widowed mothers who are dependent upon their own efforts for the maintenance of their children; that said defendants have wholly refused and neglected to provide funds to be expended for the partial support of said widowed mothers, as provided by law, notwithstanding that plaintiff has requested defendants to provide such funds. It is further alleged in the complaint that there is no other plain, speedy, or adequate remedy at law.

To this complaint the defendants filed a general demurrer and also specially demurred on several grounds, among which are the following: (1) That plaintiff has no legal capacity to sue; (2) that the complaint is indefinite and uncertain for the reason that it cannot be determined therefrom that plaintiff is a party beneficially interested in the proceeding, nor can it be determined therefrom what amount of funds should be provided, nor whether Utah county has any fund from which such provisions can be legally made. The special demurrer presents other grounds, but in the opinion of the court the grounds above mentioned are the only ones that need be considered in order to determine the questions involved.

Without waiving their demurrer, defendants at the same time also filed an answer to the complaint. Many of the issues presented by the answer are merely repetitions of the objections raised by the demurrer. In addition thereto, how-

ever, the answer, in effect, alleges that defendants, as commissioners of Utah county, have provided funds for the relief of the indigent and dependent poor of said county, and that the provision so made is adequate and sufficient to provide relief for all such persons, including widowed mothers for whose benefit relief is applied for in this proceeding. The answer further alleges that said county now has no funds from which a fund can legally be set aside for the express purpose demanded in plaintiff's complaint.

The answer presents no issuable question of fact. The questions of law to be determined are: (1) Is the duty of the county commissioners to provide a fund for the partial support of widowed mothers dependent upon their own efforts for the maintenance of their children a proper subject for mandamus proceedings? (2) Is the fact that the county commissioners have provided funds for the relief of the indigent and dependent poor of said county, including widowed mothers of the class mentioned, a valid defense against an action to compel the performance of such duty? (3) Is the fact that there are no funds available at the present time for such purpose a valid defense? (4) Is the plaintiff a proper party to bring such action? These questions will be considered in the order above stated.

1. It seems to the writer to be wholly unnecessary to multiply words in disposing of the question first above stated. The language of the statute quoted near the beginning of our statement of the case is plain, unequivocal, and unambiguous. It needs no interpretation to determine the fact that a mandatory duty is imposed upon the county commissioners to provide such funds as may be reasonably necessary to carry out the purposes of the law in accordance with its express terms and provisions. This being the case, it is a positive duty of the commissioners to provide the funds without equivocation or evasion. It is true the commissioners have the discretion to determine the amount necessary to be provided, but it is not an arbitrary discretion; it is a discretion that may be abused, and whenever abuse is properly charged the question may be reviewed even in a

mandamus proceeding.   18 R. C. L. p. 126; 26 Cyc. 161, 162.
In support of the contention that the statute relied on as the
basis of this proceeding is mandatory in its requirement that
the duty must be performed, plaintiff's counsel refers us to
36 Cyc. 1159; *Mason* v. *Fearson,* 9 How. 259, 13 L. Ed. 125;
*Hugg* v. *City Council of Camden,* 39 N. J. Law, 620; *Indus-
trial Com. of Utah* v. *Daly Min. Co.,* 51 Utah, 602, 172 Pac.
301.   See, also, 18 R. C. L., p. 119; 26 Cyc. 157, 158.

There can be no substantial doubt that mandamus in the
instant case is a proper remedy, and is the only one that is
plain, speedy and adequate.

2.   But it is contended by defendants that, having pro-
vided funds for the relief of the indigent and dependent poor
of the country, including widowed mothers dependent upon
their own efforts to maintain their children, there is no ne-
cessity for a strict compliance with the statute upon which
this proceeding is founded.   In assuming such position, de-
fendants make the mistake of attempting to substitute their
judgment for that of the Legislature.   The statute making
provision for the relief of the indigent and dependent poor
(Comp. Laws Utah 1917, § 1400x46) was enacted by the
Legislature as early as 1903, while the first statute for
the relief of dependent widowed mothers was not en-
acted until 1913.   It will thus be seen that in the opin-
ion of the Legislature the statute for the relief of the indigent
and dependent poor did not adequately fulfill the purpose
for which the latter statute was enacted.   A careful com-
parison of the two statutes will disclose the fact that they
were enacted with entirely different objects in view, and to
remedy conditions altogether dissimilar.   It was never in-
tended by the Legislature that the mothers of future citizens
of the state should be regarded as paupers or placed in the
pauper class.   Consequently, we feel compelled to hold that
a provision for the indigent and dependent poor of Utah
county is not such a provision for widowed mothers depend-
ent upon their own efforts for the maintenance of their chil-
dren as is contemplated by the statutes of the state.

3.   It is further contended as matter of defense that there

are no funds at present out of which provision can be expressly made for the purpose demanded in this proceeding. Ordinarily such a defense is a complete answer to an application for a writ of mandate; that which is impossible cannot justly be required. But assuming there are no funds at the present time available for the purpose in question, it does not necessarily follow that such condition must continue indefinitely. Utah county is a quasi public corporation, a legal subdivision of the state, with ample power to assess and collect taxes for all legitimate purposes authorized by the laws of the state. It is quite true that taxes must be assessed, levied, and collected at the time and in the manner provided by law. Defendants contend that it is now too late to assess and collect additional taxes for the year 1921. They also insist that it is too early to compel the assessment and collection of taxes for the year 1922. It is also suggested that no person has the right to anticipate that defendant will refuse to make the provision that may be required in 1922, and that until defendants do refuse there is no ground for action against them. Upon this point they cite High on Extraordinary Legal Remedies (3d Ed.) p. 17, page 160, par. 144, and page 19, par. 14; also *State* v. *Rising,* 15 Nev. 164.

The contention, to say the least, is ingenious, if not disingenuous. If it is too late to assess and collect taxes for 1921, because the time has past within which it can lawfully be done, and too early for 1922, because the time when it can be done has not yet arrived, it is easy to see, in a meritorious case, that grave injustice might be done; in fact it might happen, if the rule contended for were rigidly enforced, that relief in a case of this kind could never be obtained. The contention of defendants is squarely met by a somewhat lengthy quotation furnished by plaintiff from a Colorado case reported in 110 Pac. 197:

"The petition states ground for relief against the commissioners to take effect at the earliest date upon which they could lawfully levy the tax. The contention is that the demand for a levy occurring in the spring of 1908 it was too late for the levy of 1907, and too early for that of 1908. A court has power to grant the writ requiring a future levy at the regular time fixed by law there-

Mandamus.  Writ denied

for if the facts show that the petitioner has a cause of action, and the conduct of the defendant justifies the belief that it has no purpose to act at any time.  Were the contrary true, the defendant board might ever contend, as it does now, that there has been no refusal; hence the action does not lie; and it might thus always insist, either that an action was too late, as the levy had already been made, and too early for a future levy, as the time for that had not yet arrived, and there having been no refusal, the board abstaining from specifically doing so, his action would then be premature.  Thus a complainant with a just cause, his remedy by mandamus being exclusive, might upon trifling pretext be forever barred of his right; it being forever and ever either too early or else too late for the board to comply with the demand.  The law does not contemplate such a possibility.  Neither will it be tolerated. To so hold, and thus allow and approve a premeditated and planned evasion, would be a mockery of justice.  Had defendant by answer and return to the writ said that it was its purpose to make the levy at the earliest time that it could lawfully do so, then there would be force in its position, especially if the statute were as contended for by it.  But it is manifest from the pleadings that there is no such purpose; on the contrary, from the answer and return, it is plain that the defendant does not intend to pay, or make provision for the payment of, this claim, unless compelled to do so by judicial order and decree." *Berkey* v. *Bd. of Com'rs of Pueblo County*, 48 Colo. 104, 110 Pac. 197, 20 Ann. Cas. 1109.

The excerpt quoted is especially pertinent in the instant case for the reason that the defendants have nowhere, either in their answer or their brief, suggested or intimated that they intend to comply with the law in the future any more than they have done in the past.  We are of opinion that as far as this defense is concerned it should not be permitted to prevail, but that the defendants should, as soon as they are able under the law, in the utmost good faith, endeavor to comply with the provisions of the statute intended for the relief of widowed mothers who are dependent upon their own efforts for the maintenance of their children.

However strong may be our convictions concerning the matters discussed in the preceding pages of this opinion, there is yet a controlling question to be considered and determined before reaching a conclusion upon which an order can be entered.

4. It is contended by defendants that plaintiff has no legal capacity to sue; that he is not a party beneficially interested, as provided in Comp. Laws Utah 1917, § 7392. That section specifically provides that the writ of mandate must issue "upon affidavit on the application of the party beneficially interested." If the statute had stated that the writ might issue upon the application of a resident or a taxpayer, there would be no question but that plaintiff would be qualified to make the application, but such is not the language of the statute. The party must be *beneficially interested,* and the controlling question is, Do the words "beneficially interested" have any special or peculiar significance, or may they be applied. to any taxpayer or person residing within the state who has merely a common interest with other residents in seeing that the laws are enforced?

Notwithstanding there are many authorities supporting the opposite view, I am strongly of the opinion that statutes like ours, requiring that the applicant must be a party beneficially interested, mean that the party must have some peculiar interest separate and distinct from that of the community in general. It is my opinion that the statute in this regard should be construed the same as we would construe the law determining the right of a private individual to institute a civil action to abate a public nuisance. If the nuisance affects him only in the same manner and to the same extent that it affects the people of the community in general, it is an elementary rule of practice that he would have no standing as a plaintiff in such proceeding. If, however, he is peculiarly affected or injured by the nuisance, then, under all the authorities, he has the right to institute an action in his own name to abate the nuisance. Why should not the same construction be given to the statute in question here? The principle is identical, and I am forced to the conclusion that the Legislature intended it should be so construed. The complaint represents the plaintiff simply as a resident and taxpayer. He has no further interest in the relief demanded. As a resident he has no greater interest than any other resident. As a taxpayer, it can hardly be said that he is bene-

ficially interested, for he is seeking by this proceeding to increase the taxpayers' burdens rather than diminish them. It does not even appear that the plaintiff has as great an interest in the relief demanded in this case as he would have if the law had been enacted for the equal benefit of every resident of the community. While it has been held, in a thoroughly well-considered case heretofore decided by this court (*D. & R. G. R. R.* v. *Grand County,* 51 Utah, 294, 170 Pac. 74, 3 A. L. R. 1224), that the partial support of widowed mothers dependent upon their own efforts for the maintenance of their children is a public purpose within the purview of laws relating to taxation, still it must be admitted that the law providing for such support does not confer equal benefits upon other residents of the commonwealth. It is made for the direct benefit of a particular class, while the benefit to the entire community is only incidental. Plaintiff does not come within the class directly benefited, and therefore his interest appears to be even more remote than it would be if the law was general in its application. It is exceedingly difficult, therefore, to find any legal reason for upholding the contention of plaintiff that he is a party beneficially interested within the meaning of the statute. This view is sustained by many well-considered cases cited by defendant. 19 Std. Ency. Pro. 248; High, Extraordinary Legal Remedies (3d Ed.) 420; *Eby* v. *Board of School Trustees,* 87 Cal. 166, 25 Pac. 240; *Young* v. *Regents of University of Kansas,* 87 Kan. 239, 124 Pac. 150; *Sterling* v. *Regents Univ. of Mich.,* 110 Mich. 369, 68 N. W. 253, 34 L. R. A. 150. See, also, *Bobbett* v. *State,* 10 Kan. 9; *Webster* v. *Common Council of San Diego,* 8 Cal. App. 480, 97 Pac. 92; *Pearsons* v. *Ranlett,* 110 Mass. 118; *Smith* v. *City of Saginaw,* 81 Mich. 123, 45 N. W. 964; *In re Wellington,* 16 Pick. (Mass.) 87, 26 Am. Dec. 631; *Scripture* v. *Burns,* 59 Iowa, 70, 12 N. W. 760; *State* v. *Eberhardt,* 14 Neb. 201, 15 N. W. 320; *Heffner* v. *Commonwealth,* 28 Pa. 108; *Ellis* v. *Workman,* 144 Cal. 113, 77 Pac. 822; *Colnon* v. *Orr, Treasurer,* 71 Cal. 43, 11 Pac. 814; *Fritts* v. *Charles,* 145 Cal. 512, 78 Pac. 1057.

In support of plaintiff's contention that he is a proper

party to make application for the writ, his counsel refer us to *People* v. *Harris*, 203 Ill. 272, 67 N. E. 785, 96 Am. St. Rep. 304; High on Extraordinary Legal Remedies (3d Ed.) 431; *County of Pike* v. *People cx rel. Metz*, 11 Ill. 202; *City of Ottawa* v. *People*, 48 Ill. 223; *Frantz* v. *Wyo County Court*, 69 W. Va. 734, 73 S. E. 328; *Wampler* v. *State ex rel. Alexander*, 148 Ind. 557, 47 N. E. 1068, 38 L. R. A. 829; 18 R. C. L. 325.

The paragraphs referred to by plaintiff from High on Extraordinary Legal Remedies and Ruling Case Law, supra, seem to hold that the weight of authority sustains the right of a private citizen to institute mandamus proceedings to enforce a right which pertains to the public at large in which the applicant may have no peculiar interest. The correctness of this proposition, as shown by many of the cases above cited, is seriously disputed, yet, conceding it to be true, I have found no case in my investigation of the question which sustains the right where the demand is made in the interest of a class merely, and where the applicant is not a member or representative of the class. Therefore it seems to me that to hold in favor of plaintiff's contention in the instant case would be to apply the rule to cases to which it has never heretofore been applied in any jurisdiction of the country.

In a very recent decision by this court (*Crockett* v. *Board of Ed. of Carbon Co. School Dist.*, 58 Utah 303, 199 Pac. 158) it was held that a resident citizen and taxpayer was beneficially interested, and therefore authorized to institute mandamus proceedings to compel the school district to publish an annual statement of its receipts and disbursements of money, as provided in Comp. Laws Utah 1917, § 4614. Being a resident and taxpayer of the district, he was beneficially interested as such in being informed as to the amount of money the district had received and the particular purposes for which it had been expended. But suppose he had not been a taxpayer or resident of the district at all—in other words, did not come within the class of persons in any sense specially interested in the relief applied for, as is the case with plaintiff here—could he have maintained the action on

the theory that he was interested as a citizen in seeing that the law was enforced? It is a moot question, and one which, perhaps, the writer ought not to attempt to answer. This, however, may be said—perhaps without transgressing the rules of propriety—if the *Crockett Case* had been as hypothetically stated, instead of being as it appears in the published report, it is by no means certain that the conclusion reached by the court would have been the same. We have no reason to think it would from any adjudicated case with which we are familiar.

There seems to be no present necessity for inaugurating an innovation in the instant case. Any widowed mother of the class mentioned, for whose relief the law was enacted would undoubtedly have the right to apply for a writ of mandate to compel an enforcement of the law. Any attorney authorized to represent the county, district, or state would have the right, and any person upon whom legal demand might be made to furnish support to such widowed mother or her minor children would in law be considered beneficially interested within the meaning of the statute, and therefore authorized to institute the proceeding. We do not assume in advance to suggest, except tentatively, who might be authorized to apply for the writ in a case of this kind. We are, however, decidedly of the opinion that it should be a person whose relation to the case is something more than that of a mere resident or taxpayer of the county. To hold in the present case that plaintiff being a resident taxpayer of Utah county is all that is necessary to qualify him to prosecute the action is, in our view of the law, to disregard and set at naught the statute which provides that the applicant should be a party *beneficially interested* in the proceeding.

We are firm in our conviction that the law sought by plaintiff to be enforced is a humane, wholesome, beneficent statute and should be conscientiously and faithfully enforced in every county in the state. Nevertheless, for the reasons stated, it becomes our duty to deny the writ prayed for in the complaint.

The peremptory writ is therefore denied. Each party to pay his own costs.

WEBER, GIDEON, and FRICK, JJ., concur.

CORFMAN, C. J. I dissent. I am in full accord, however, with the reasoning and the conclusions arrived at by Mr. Justice THURMAN, wherein he holds that the board of county commissioners failed to perform a duty that our statutes specifically enjoin, and that mandamus will lie to compel them to perform such duty.

It is the intepretation of our statutes, and the holding that before the plaintiff in mandamus can maintain the action he must show that he has some peculiar or distinct interest separate and apart from that of a member of the community or body politic in general, to which I am unable to give my assent.

In so far as the same may be material here, our statutes with respect to the issuance of the writ provide:

"It may be issued by the Supreme Court, or by a district court or a judge thereof to any * * * board, * * * to compel the performance of an act which the law specially enjoins as .a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right * * * to which he is entitled and from which he is unlawfully precluded by such * * * board * * *" Comp. Laws Utah 1917, § 7391.

Section 7392 provides:

"This writ must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested."

In this case there is no question but that the plaintiff seeks to compel the performance of an act on the part of the county commissioners which the law specially enjoins, and that the case is one in which there is no plain, speedy, and adequate remedy at law. The prevailing opinion so finds. To my mind it is equally clear and certain that the plaintiff is seeking to compel the admission of himself to the use and enjoyment of a right to which he is entitled, and from which he, as a resident, citizen, and taxpayer (conceded to be such)

is unlawfully precluded by reason of the failure of the commissioners to act.

Nowhere in the statutes is it said that the relator must have some peculiar or distinct interest separate or apart from that of the community in general.   The kind or degree of the interest which the relator must possess in order to maintain mandamus is not specified.   If the Legislature had intended that the right to the writ should be limited to a particular class, receiving direct benefits, presumably it would have said so.   The prevailing opinion seems to hold that within the meaning of our statutes the only persons beneficially interested and entitled to the writ are those who belong to a class to be directly benefited by its issuance—in this case widowed mothers and their dependent children.   If that be true, then the "Dependent Mothers Act" (Comp. Laws 1917, §§ 3960-3968) which the plaintiff asks to have the commissioners comply with is nothing but a species of class legislation, illegal, and a wrongful invasion of the rights of the taxpayer.   But, as to the legality of the act sought to be enforced here, this court has already passed upon that in *D. & R. G. R. R.* v. *Grand County,* 51 Utah, 294, 170 Pac. 74, 3 A. L. R. 1224, referred to in the prevailing opinion.   In that case we said, speaking through Mr. Justice Gideon, the writer of the opinion:

"Having in mind the public welfare by assisting in surrounding children of tender years with home associations, with the care and nurture of their natural protector, the mother, the Legislature by this act has determined that to be a policy of the state.   Such being the object of the act, this court would not be justified in declaring the act invalid and that the funds so used are not used for a *public purpose.* (Italics mine.)

Ordinarily, at least, a resident and taxpayer, such as the plaintiff here is conceded to be, is interested in every "public purpose."   Moreover, he has a very great and substantial right to be.   As a citizen, aside from mere altruistic principles, he necessarily is interested in seeing that dependent children do not become human derelicts or a charge upon the state.   As a taxpayer, paying taxes, he has the right to demand that the revenues collected are directed to the proper

channels and used for the purposes for which they are levied and collected. That he is materially benefited and beneficially interested in seeing that done there can be no doubt.

As I view the statute providing for and directing that a fund be created in the several counties of the state for the relief of dependent mothers, the objects to be attained come under the police powers of the state. In the exercise of these powers the county commissioners of the several counties are charged with a purely public duty, that of creating a fund to be used for the relief of dependent mothers. In *Union Pac. R. R. Co.* v. *Hall et al.*, 91 U. S. 355, 23 L. Ed. 428, it is said:

"In this country there is diversity of decision upon the question whether private persons can sue out the writ to enforce the performance of a public duty, unless the nonperformance of it works to them a special injury; and in several of the states it has been decided that they cannot. An application for a mandamus, not here a prerogative writ, has been supposed to have some analogy to a bill in equity for the restraint of a public nuisance. Yet, even in the supposed analogous case, a bill may be sustained to enjoin the obstruction of a public highway, where the injury complained of is common to the public at large, and only greater in degree to the complainants. * * * There is, we think, a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law officer. [Citing cases.] The principal reasons urged against the doctrine are that the writ is prerogative in its nature—a reason which is of no force in this country, and no longer in England—and that it exposes a defendant to be harassed with many suits. An answer to the latter objection is that granting the writ is discretionary with the court, and it may well be assumed that it will not be unnecessarily granted."

18 R. C. L. § 273, states the rule thus:

"Although in the case of an application for mandamus, where private or corporate rights are affected, the relator must show an interest, the rule established by the preponderance of authority is that, where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result; it being sufficient that he is interested as a citizen

in having the laws executed and the duty in question enforced"—citing many cases supporting the text.

In *State of Nebraska ex rel. Stanley Thompson* v. *City of Kearney*, 25 Neb. 262, 41 N. W. 175, 13 Am. St. Rep. 493, the Nebraska court states the rule, quoting from the syllabus, to be:

"The rule that, when the question presented is one of public right, and the object of the action is to enforce the performance of a public duty, it is sufficient for the relator to show that he is a citizen, and as such is interested in the execution of the laws, applies more particularly to cases where the failure to perform the duty affects all the members of the community alike. * * * Where private or corporate rights are affected, then the relator must show an interest."

Some few states, it is true, particularly California (*Ashe* v. *Supervisors*, 71 Cal. 236, 16 Pac. 783) hold to the contrary, and that the phrase "beneficially interested" means such an interest shown in the relator as is separate and apart and distinguishable from that of the mass of the community. Those states hold that the writ is purely a prerogative writ. As hereinbefore pointed out, it is by the great weight of authority not now so considered nor regarded.

The plaintiff here has no special interest nor private right to be subserved. Nevertheless he is beneficially interested to the extent of a taxpayer in seeing that the laws are obeyed and properly executed. In this particular case a public duty is not being performed by the county commissioners. A public right is being ignored. It may be well to leave the right to compel performance to the *dependent widows*, but it would seem that if an interested citizen and taxpayer seeks compliance with the statutes, the courts, in the interests of common justice and public rights, ought not to hold that he is not beneficially interested within the meaning of the statute, and leave the enforcement of the law to the dependents. Moreover, had a dependent widow brought the present action, she would be before this court in precisely the same situation as that of the plaintiff—seeking to have the fund created which the law directs—and would be entitled to no other relief than an order of this court compelling the board to act.

Mandamus is in the nature of a civil remedy. In the present case the plaintiff comes seeking to enforce that which he conceives to be the right of every person—to seek redress before the courts—to compel the proper observance of a statute on the part of the county commissioners, which as pointed out in the prevailing opinion, said commissioners have failed to observe. In my judgment that which he seeks is not only a substantial right, but one that cannot justly be denied.

The right of the citizen in governments like ours to see that the laws of the state are properly enforced and public rights respected by public officers is a legal right, and one which the courts should take cognizance of in every proper case. If our courts are closed to the citizen in cases like the present one it is difficult to conceive how the interests of the public generally are to be safeguarded. It is fair to assume that dependent widows have no financial means with which they might employ lawyers and pay court fees. Unless some public-spirited citizen seeks redress there is no redress. Our organic law provides:

"All courts shall be open" and "no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

It will not do to suggest that the district attorney or county attorney or some other public official, as distinguished from a private citizen, may prosecute in a case like the one at bar, for it is very clear that a public officer would not be any more "beneficially interested" than any other citizen. I fully appreciate that courts may and should be somewhat guarded in granting writs of this nature through fear that the merely curious and inquisitive might unduly vex and hamper the public officers in the proper discharge of the duties pertaining to their offices; but the courts have the power and discretion to deny applications of such a nature, once they are before them, and there can be no just presumption that they would not do that.

In this case, however, it is conceded that the defendants ought to comply with the statute and create the fund that the plaintiff seeks to have created. Therefore it would seem that

if he is denied mandamus in this case it must be for a purely technical reason, and not upon any substantial ground whatever.

The plaintiff here seeks to have defendants perform that only "which the law specifically enjoins as a duty resulting from an office." That ought to be the right to which every citizen is entitled under a government like ours, one in which there is no sovereign, but the whole people.

Then again, the statute reads:

"It may be issued * * * to compel the admission of a party to the use and enjoyment of a right * * * to which he is entitled and from which he is unlawfully precluded by such * * * board."

To deny mandamus in the present case is to deny a citizen the right to the compelling process of the courts, where the defendants are not only found clearly derelict in their official duties, but it also precludes plaintiff from seeking redress in the courts when his individual right as a citizen and taxpayer are being denied him. Plaintiff's rights as a citizen may differ from those directly benefited by the fund which he here seeks to have the defendants in their official capacity create, but, nevertheless, the Legislature and not the courts should be left to determine the degree in which he must be "beneficially interested" to entitle him to the compelling process for which he applies. Upon that subject, the Legislature, wisely I think, has not spoken. I am firmly convinced that under the admitted facts of the present case mandamus should lie.