**SOCIETY OF PROFESSIONAL JOURNALISTS, UTAH CHAPTER, and KUTV, Inc., Petitioners,**

**v.**

**Honorable J. Robert BULLOCK, District Judge, Respondent.**

**No. 20595.**

Supreme Court of Utah.

Sept. 11, 1987.

Spencer E. Austin, Alan L. Sullivan, and Patrick A. Shea, Salt Lake City, for petitioners.

David L. Wilkinson and Stephen Mikita, Salt Lake City, and Wayne B. Watson and Richard B. Johnson, Provo, for respondent.

ZIMMERMAN, Justice:

This case is before the Court on a petition for an extraordinary writ filed pursuant to Rule 65B(b)(2) of the Utah Rules of Civil Procedure.[1] The Utah Chapter of the Society of Professional Journalists petitions this Court to overturn an order of the District Court for the Fourth Judicial District denying the public access to pretrial proceedings held to determine Ronald Watson Lafferty's competence to stand trial. The Society challenges the district court's orders closing the competency proceedings and its subsequent orders sealing both the transcripts of the proceedings and the memorandum decision explaining why it found Lafferty competent to stand trial.

After the Society filed its petition for a writ with this Court, KUTV, Inc., and three individual journalists filed a motion asking leave to be joined as petitioners. For the reasons set forth below, we grant the motion as to KUTV and deny it as to the individual journalists.

On the merits, we agree with petitioners that the district court abused its discretion, both by denying the public access to the competency proceedings without first holding hearings on the appropriateness of closure and by closing the proceedings and sealing the transcripts and memorandum decision without issuing supporting findings of fact and conclusions of law. To correct this abuse of discretion, the writ is granted. The district court is directed to reconsider its order sealing the transcripts and the memorandum decision. To effect this reconsideration, the district court is directed to hold a hearing on the issue presented by the request to close and seal and to support any resulting decision with detailed findings and conclusions. Lafferty should be represented at such a hearing.

Ronald Lafferty was charged with two counts of capital homicide arising out of the 1984 murder of his sister-in-law and her child in Utah County. Lafferty claimed that he had committed the murders to fulfill a divine revelation. The case understandably generated substantial public interest.

Over a period of six months, the district court held three proceedings to determine whether Lafferty was competent to stand trial. The record is not clear, but it appears that the court did not hold hearings concerning whether to close the first two competency proceedings to the public. However, the district court did conduct a closure hearing prior to the third competency proceeding, as evidenced by a minute entry dated April 2, 1985. In any event,

---

1. Before this Court, respondent does not object to the Society's choice of an extraordinary writ as the means by which to challenge its closure orders. Nevertheless, we note that the Society's pursuit of an extraordinary writ is procedurally correct. The Society has no alternative course to follow. Because it is not a party or privy to the proceedings below, it cannot appeal the dis-

trict court's orders. *See generally* 4 Am.Jur.2d *Appeal and Error* § 173 (1962). Rule 65B(b)(2) provides the Society with its sole means to obtain a "plain, speedy and adequate remedy" for the district court's alleged abuse of discretion. *KUTV, Inc. v. Conder,* 668 P.2d 513, 517 (Utah 1983).

each competency proceeding was closed to the public. Although the transcript of the first competency proceeding was released, the district court sealed the transcripts of the latter two. On April 8, 1985, six days after the third competency proceeding, the district court filed and sealed a memorandum decision finding Lafferty competent to stand trial. The court issued no written findings or conclusions explaining its decision to close the third competency proceeding, and it refused to release either the transcripts of the latter two proceedings or its memorandum decision.

Immediately following the April 8th decision, petitioners sought a writ from this Court. They challenged both the propriety of the closure order and the court's subsequent refusal to release the transcripts and the memorandum decision on the ground that the court failed to issue supporting findings and conclusions. Since the filing of that petition, Lafferty has been convicted of two counts of first degree murder and has been sentenced to death.

█ Before addressing the merits of the petition, we address, *sua sponte*, two preliminary matters. The first is whether this case should be dismissed as moot. The second is the standing of the various petitioners to challenge the rulings below. The mootness question presents itself because the competency hearings have been concluded, Lafferty has been tried and convicted, the public's interest in the case has waned, and the transcripts and memorandum decision have lost the copy value they had prior to trial. It might be argued that all these factors justify a finding that the request for the writ is moot. However, the transcripts and the court's memorandum decision are still concealed from public view; therefore, the primary evil complained of persists. The matter is not moot, and a justiciable issue regarding release of those documents presently exists. In addition, we note that in cases involving access to pretrial proceedings, there seldom will be sufficient time for an appellate court to intervene before the proceeding is concluded. That fact alone would justify an exception to the mootness

doctrine because otherwise, the important public issue of access to pretrial proceedings is likely to evade review. *See, e.g., Kearns-Tribune Corp. v. Lewis,* 685 P.2d 515 (Utah 1984); *KUTV, Inc. v. Conder,* 668 P.2d 513, 516 (Utah 1983); *Wickham v. Fisher,* 629 P.2d 896, 899–900 (Utah 1981).

The second preliminary issue which the parties did not raise but which we choose to consider is whether the Society and the parties who seek to be joined as petitioners have standing to challenge the district court's actions. *See, e.g., Olson v. Salt Lake City School District,* 724 P.2d 960, 962 n. 1, 964 (Utah 1986); *Terracor v. Utah Board of State Lands & Forestry,* 716 P.2d 796, 798 (Utah 1986); *Utah Restaurant Association v. Davis County Board of Health,* 709 P.2d 1159, 1160 (Utah 1985); *Heath Tecna Corp. v. Sound Systems International, Inc.,* 588 P.2d 169, 170 (Utah 1978). It was only after this Court raised, *sua sponte,* the question of whether Society had standing that John Edwards, Ernest J. Ford, Michael Youngren, and KUTV, Inc., sought to be joined as petitioners. According to the memorandum in support of their petition to join, KUTV and the above-named individual journalists are all members of the Society. They seek to join solely to demonstrate an identity of interest between themselves and the Society. Their intent is to buttress the Society's claim that it, as an association of professional news organizations and individual members of the press in Utah, has standing to represent the interests of its members. Before analyzing the standing of the Society, KUTV, and the individuals, a rather detailed recitation of the relevant facts that can be drawn from the sparse record below is necessary.

Sometime after the second competency proceeding was completed on January 28, 1985, an attorney representing the Society sought a transcript of that proceeding. The district court denied the request.

On April 2, 1985, the date of the third competency proceeding, the Society's attorney appeared and protested the closure of the proceeding at a hearing held just before the proceeding was scheduled to be-

gin. This protest was unavailing, as previously noted, and the district court ordered the hearing closed.[2]

On the same date, and after the judge had ordered the proceeding closed to the public, the attorney representing the Society moved the district court for an order allowing the press access to the transcripts of the second and third competency proceedings. In addition to the Society, the attorney also represented KUTV and other parties not present here in moving for the release of the transcripts. The district court took the motion under advisement and proceeded to hold the third and final closed competency hearing. Sometime after the district court issued its memorandum decision respecting Lafferty's competence to stand trial and its order sealing that memorandum decision, the judge orally represented to the attorney for the Society and KUTV that the sealed decision denied his clients' joint motion to release the transcripts.

Consideration of the standing of the various parties to this proceeding is a rather complex matter. Therefore, we proceed by steps. First, we describe our traditional standing requirements for litigating an action. Second, we discuss additional requirements applicable when a party files a writ seeking appellate-type review of a tribunal's rulings. Next, we determine each petitioner's standing under these rules.

■ Our generally stated standing rule is that a plaintiff must have suffered "some distinct and palpable injury that gives him [or her] a personal stake in the outcome of the legal dispute."[3] *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983); *accord Utah Restaurant Association v. Davis County Board of Health*, 709 P.2d

at 1162; *Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 454 (Utah 1985); *see Baird v. State*, 574 P.2d 713 (Utah 1978). The need for such a personal stake frequently is described as a requirement that the plaintiff's injury be "particularized." The traditional standing requirement is generally justified on grounds that in the absence of a requirement that a plaintiff have a "personal stake in the outcome" or a "particularized injury," the courts might permit themselves to be drawn into disputes that are not fit for judicial resolution or amount to "generalized grievances that are more appropriately directed to the legislative and executive branches of the state government." *Jenkins v. Swan*, 675 P.2d at 1149; *see Terracor v. Utah Board of State Lands & Forestry*, 716 P.2d at 798–99; *Baird v. State*, 574 P.2d 713, 717 (Utah 1978).[4]

■ Anyone bringing an original proceeding—a dispute that is being presented to the courts for the first time—must satisfy the traditional standing test. And this test applies whether the proceeding is initiated in a trial court or in an appellate court. *Jenkins v. Swan*, 675 P.2d at 1148, 1151 (declaratory judgment action in district court); *see, e.g., Terracor v. Utah Board of State Lands & Forestry*, 716 P.2d at 799, 800 (writ sought from Supreme Court); *Startup v. Harmon*, 59 Utah 329, 336, 203 P. 637, 641 (1921) (writ sought from Supreme Court); *Crockett v. Board of Education*, 58 Utah 303, 309, 199 P. 158, 160 (1921) (writ sought from district court).

Having said this, an added wrinkle appears when, as here, we are faced with a petition for an extraordinary writ which in substance is not an original proceeding because it is not a controversy that is

---

2. The district court did permit an attorney for the Society to attend the third competency proceeding. No members of the Society, however, were allowed to be present. Moreover, at the close of the competency proceeding, the court ordered all those present, including counsel for the Society, to refrain from discussing the evidence presented.

3. It is not necessary or appropriate for us to consider the merits of the petitioners' claim in deciding whether they have standing. *See* K.

Davis, *Administrative Law Treatise* § 22.20, at 187–88 (1980).

4. In *Jenkins*, we noted that even if this traditional test for standing is not satisfied, under unique circumstances we might still grant standing as a matter of discretion. 675 P.2d at 1150–51. Because the present case can be dealt with under the traditional test, we need not consider the alternative grounds for standing discussed in *Jenkins*.

brought before the courts for the first time. Instead, the issue presented here is in the nature of an appeal. Petitioners seek to have this Court adopt the position advanced by the Society and KUTV before the court below and to overturn that court's ruling closing the hearings and sealing the transcripts and the memorandum decision. In fact, if petitioners had sought and had been granted intervention in the Lafferty criminal matter solely for the purpose of opposing the closure of the hearings, they could have brought the resulting closure order before us on direct appeal.[5]

In Utah, there is nothing illegitimate about one using a writ to obtain review of a lower court ruling. We have been rather free in permitting the use of writs to obtain review of rulings by lower tribunals, especially when the party seeking the writ was not a party to a proceeding before the tribunal issuing the ruling under attack. *See, e.g., Kearns-Tribune v. Lewis,* 685 P.2d at 517; *KUTV, Inc. v. Conder,* 668 P.2d at 517. We impose no requirement that a party seek to intervene and appeal before permitting the use of a writ to obtain appellate review. *Id.* However, the fact that a writ can be used to obtain appellate-type review of a lower tribunal's ruling raises a concern that no party be advantaged insofar as standing is concerned by reason of having petitioned this Court for a writ rather than having proceeded by way of an appeal. For this reason, it is appropriate to consider whether something more than the facts required to satisfy the traditional standing test as it is applied in original proceedings should be necessary before a party can seek appellate-type review by way of a petition for an extraordinary writ. We conclude that there should be such an additional showing required to maintain parity between procedural devices and to assure that when an

appellate court is performing an appellate function, the normal preconditions for the exercise of that function have been met. For the purposes of this discussion, we will refer to the factual preconditions needed to obtain appellate review by petition for an extraordinary writ as "appellate standing." This will serve to distinguish this factual showing from the factual showing usually sufficient to satisfy the traditional standing test used in original proceedings of "personal stake in the outcome" or "particularized injury." [6]

■ We first must consider what is required of one who properly takes an appeal. Only then can we craft analogous requirements for those seeking appellate review by writ. On appeal, a party whose standing is challenged must show that he or she had standing under the traditional test in the original proceeding before the district court. *See, e.g., Olson v. Salt Lake City School District,* 724 P.2d 960, 962 n. 1 (Utah 1986). In addition, an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment. *Id.* at 962; *Board of Adjustment v. Kuehn,* 132 Colo. 348, 290 P.2d 1114 (1955); *see* R. Utah S.Ct. 3(b)–(f); *see generally* 4 Am.Jur.2d *Appeal and Error* § 173 (1962). Satisfaction of analogous requirements therefore will be necessary to demonstrate appellate standing and keep appellate review by writ on a par with appellate review by appeal.

Satisfaction of analogous requirements for appellate review by writ also will serve the interests that underlie the traditional standing test by assuring that the individual litigating the issue has a real personal interest in the matter, that the issues are narrowly drawn, and that the courts are exercising their traditional dispute resolu-

---

5. There may be other circumstances in which a direct appeal would lie. *See KUTV, Inc. v. Conder,* 668 P.2d at 517 (appeal proper when non-party is restrained by injunctive order against publication).

6. This is not to say that at some analytical level, a requirement of a showing of appellate standing may not be considered to be part of the

concept embodied in the traditional test and nothing more than a fact-specific manifestation of the general standing test. *See, e.g., Terracor v. Utah Board of State Lands & Forestry,* 716 P.2d at 799. Be that as it may, for present purposes we use the two terms distinctly for ease of understanding.

tion function. *See generally Terracor v. Utah State Board of Lands & Forestry,* 716 P.2d at 798–99; *Jenkins v. Swan,* 675 P.2d at 1149; *Baird v. State,* 574 P.2d at 717; 4 Am.Jur.2d *Appeal and Error* § 182 (1962).

■ Based on the foregoing, we conclude that to demonstrate appellate standing, one using a petition for a writ as a vehicle to obtain appellate-type review of a trial court's ruling must show the following: (i) the petitioner had standing to proceed before the district court, (ii) the petitioner is challenging the district court's ruling adverse to him or her, and (iii) the petitioner appeared and presented his or her claims to that court. If the petitioner fails to establish any one of these standing requirements, this Court will not consider the claims.

The first two of these preconditions to review are identical to those imposed upon appellants. The last—that the petitioner has appeared and presented his or her claims below—diverges slightly from the "party or privy" requirement that is imposed on an appellant. However, the very reason for seeking appellate review by way of a writ is because the petitioner was not a party below and cannot appeal. *See, e.g., KUTV, Inc. v. Conder,* 668 P.2d 513 (Utah 1983). The requirement we articulate today serves much the same purpose as the party or privy requirement by assuring that the petitioner has brought his or her claims before a lower court, and it has had the opportunity to hear and consider those contributions and to rule upon them. When we are then called upon to consider the lower court's action, this matter will be postured, for all intents and purposes, as on appeal.[7]

Applying the foregoing standards, we first will consider whether petitioners had standing to proceed before the district court. As noted above, our standing cases have said that as a general rule, some sort of personal stake in the outcome, often termed a "particularized injury," must be shown by the one claiming standing under the traditional test. *Jenkins* and sources on which it relied offer further guidance as to the requirement of a personal stake in the outcome of the controversy. *Jenkins* stated:

> One who is adversely affected by governmental actions has standing under [the traditional criteria of the plaintiff's personal stake in the controversy]. One who is not adversely affected has no standing. A mere allegation of an adverse impact is not sufficient. There must also be some causal relationship alleged between the injury to the plaintiff, the governmental actions and the relief requested. Because standing questions are usually raised prior to the introduction of any evidence, we will necessarily be required to make a judgment whether proof of such a causal relationship is difficult or impossible and whether the relief requested is substantially likely to redress the injury claimed. K. Davis, *Administrative Law Treatise* § 22.20 at 368–70 (1982 Supp.). If the

---

7. The only Utah writ case to come to our attention in which a petitioner has been denied standing to challenge the action of a body before which the petitioner had earlier appeared and pressed a claim is *Terracor v. Utah State Board of Lands & Forestry,* 716 P.2d 796 (Utah 1986). There, the finding that the petitioner lacked standing was based on this Court's conclusion that in its petition for a writ, Terracor specifically did not seek to overturn the decision of the Land Board that was adverse to it, but was only attacking the lawfulness of the action of the Board in favor of another party. *Id.* at 798–800. This Court reasoned that a resolution of the issues presented would have no impact on the decision of the Land Board which was adverse to Terracor.

Phrased in terms appropriate to the instant matter, the *Terracor* petition for a writ was viewed as not being appellate in nature; Terracor was simply mounting a fresh challenge to the agency's actions. Therefore, its standing before this Court was in no way advanced by the fact that it had standing before the Board of State Lands in an unrelated proceeding below. From that perspective, this Court saw Terracor's writ petition as nothing but a generalized attack on the Board's mode of proceeding, an attack that could have been made equally well by anyone. Therefore, Terracor could show no adverse interest and was denied standing. *Id.* Had Terracor directly challenged the agency's decision adverse to it, there would have been no question as to its standing to seek the writ. *See id.*

plaintiff satisfies this requirement, he [or she] will be granted standing and no further inquiry is required.

675 P.2d at 1150.

This passage from *Jenkins*, which is based on Professor Kenneth Culp Davis's treatise on administrative law, captures the essence of the injury requirement. Under this standard, to determine whether petitioners had the requisite personal stake in the proposed governmental action, we first consider the claims of adverse impact, then the alleged causal relationship between the governmental action and the adverse impact, and finally, the likelihood that the relief requested will reduce the injury claimed.

Does the Society's asserted interest satisfy the requirement that the governmental injury have an adverse impact on the one seeking standing? The interest asserted by the Society is one grounded in the language of the Utah Constitution:

The freedoms of speech and press are fundamental to the effective exercise of the ultimate political power of the people. If they are to exercise their sovereign power in an intelligent and responsible manner, the people must have free speech and a free press and *access to operations of government.*

*Kearns-Tribune Corp. v. Lewis,* 685 P.2d 515, 521 (Utah 1984) (emphasis added) (discussing Utah Const. art. I, § 2; art. I, § 15). The Society's claim before the district court was that it had an interest in attending the Lafferty competency proceedings. It claimed that the proceedings should be open and that before they could be closed, the district court needed to make certain findings. *See id.*

The interest in access asserted by the Society and the other petitioners is one shared by all members of the public. By attending criminal proceedings, members of the public gain a fuller understanding of the criminal justice system. *Id.* Simply by knowing that they can attend a significant criminal proceeding if they choose to do so, the people's confidence in the integrity of that system is bolstered. And whenever a proceeding is closed, all members of the public can be said to have their access interest adversely affected. Nevertheless, the public's interest in access is generalized in that it is shared by each member of the public equally, and it applies to each criminal proceeding.[8] At the time any particular party stands at the threshold of a courtroom that is about to be closed, it might be said that that party has no interest in the openness of the proceeding that is not held in common with all and, therefore, that he or she does not stand to suffer a personal adverse impact from the closure, but merely is presenting a generalized complaint that should not entitle that individual to a grant of standing. *See Jenkins v. Swan,* 675 P.2d at 1151.

**8.** The Society asserts that its members are representatives of the public and that it is appearing on their behalf as a matter of special obligation to enforce the public's right of access. We recognize that "the media often act as surrogates in asserting the public's constitutional right of access," *Kearns-Tribune Corp. v. Lewis,* 685 P.2d at 521–22, and that media attendance at criminal proceedings, as a rule, "will result in far more general dissemination of information about judicial proceedings than the attendance of any other members of the public." *Id.* at 522. However, the news media's status as a surrogate for the public does not carry with it any greater right of access than that held by any member of the public. *Id.* at 521. Similarly, its surrogate status does nothing to particularize the media's generalized interest in open criminal proceedings.

The Society's members do have an economic interest in access that distinguishes them from the public at large. The press is in the business of gathering and reporting the news. Barring these individuals and professional organizations from pretrial proceedings directly affects their ability to conduct their business, thus giving them a substantial and tangible economic interest in the outcome of this dispute. Still, the news media's economic interest in attending a particular pretrial criminal proceeding is generalized. Each member of the press has a financial stake in every newsworthy criminal proceeding. And if we were to permit this generalized economic interest of the media to give them standing in any case in which the access interest was at issue, it would conflict with our refusal to recognize a special surrogate status for the media. Therefore, this economic interest does not suffice to give the media standing with respect to any single proceeding.

However, it is worth noting at this point what has been said several times in the past: "[I]t is difficult to make useful, all-inclusive generalizations that determine whether standing exists in any given case, since the issue often depends on the facts of each case." *Terracor v. Utah Board of State Lands & Forestry*, 716 P.2d at 799 (citations omitted); *see Crockett v. Board of Education*, 58 Utah at 309, 199 P. at 160. In characterizing the claimed adverse impact of a governmental action on one claiming standing, reference to the policies underlying standing is warranted. As noted above, the traditional test for standing reflects a long-standing judicial hesitancy to grant standing to those with generalized complaints, a hesitancy rooted in concerns about courts' deciding matters that are not properly reduced to a concrete dispute between the parties and in concerns about considering matters better dealt with by another branch of government. *See* p. 1170, *supra.* None of these considerations are at play here. The issues here are not abstract and academic. They are concrete and crystalized: a specific court closure and sealing are at issue. In addition, while the interest affected may be shared by all members of the public, the issue is to be litigated by those with a direct interest. *See Jenkins v. Swan*, 675 P.2d at 1149. Finally, there is no concern here about the courts' permitting themselves to be used to resolve questions that are more properly committed to other branches of government. The issue—whether a constitutional right of access exists and is being denied—is of a type that is committed to the judiciary for resolution. Indeed, it is hard to imagine how the issue of access, especially access to judicial proceedings, could be resolved by any other branch. Under all these circumstances, the values underlying the standing concept do not warrant construing the requirement of an adverse personal impact in such a fashion as to preclude adjudication of a challenge to a governmental action such as the one presented here.

 In light of the foregoing, the requirement of adverse impact is met by anyone who claims a right of access to a judicial proceeding and then actually takes steps to exercise that right but is denied access. For example, one who seeks from the court clerk a transcript which has been sealed pursuant to a closure order has taken steps to assert an access interest. Similarly, one who crosses the threshold of the courtroom to attend a judicial proceeding acts affirmatively to assert a right to access. Finally, one who has a right to attend and appears through counsel to protest closure has taken steps to assert an access interest. In these cases, as perhaps in others, a direct adverse impact, as that phrase was used in *Jenkins*, has been suffered by reason of the denial of access.

 Once an adverse impact is found, two other showings must be made to demonstrate that standing existed at the district court. Specifically, there must be a likelihood that the claimant will be able to show (i) that there exists a causal relationship between the governmental action and the injury to the plaintiff, and (ii) that the relief requested will provide a remedy for the injury. *Jenkins v. Swan*, 675 P.2d at 1150. In the context of challenges to court closures by those actually attempting to exercise access rights, these requirements are easily met. First, there is a direct causal connection between the threatened action of the judge and the injury that will be suffered—an inability to exercise access rights and to observe the government processes at work. Second, the relief sought—opening of the proceeding—would provide a direct remedy for the anticipated injury. Based on the foregoing, we conclude that while anyone has the right to appear and to assert an access interest, only those who do will have standing to challenge an attempt by a court to close a proceeding or to seal a document.

We now must consider specifically the standing of the Society. Had it been an individual, actual assertion of the right of access certainly would have satisfied the requirements for standing.[9] However, it is

---

**9.** Our prior decision in *Kearns-Tribune Corp. v.* *Lewis,* 685 P.2d 515, 518 (Utah 1984), appears to

an organization that appeared before the trial court and protested, on behalf of its members, the closure of the hearing and the sealing of the transcript and memorandum opinion. Does the fact that it appeared in its representative capacity affect its standing? In *Utah Restaurant Association v. Davis County Board of Health,* 709 P.2d 1159 (Utah 1985), we held that an association can represent its members in judicial proceedings when "(i) the individual members of the association have standing to sue; and (ii) 'the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause.' " *Id.* at 1163 (quoting *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)).[10]

▇ Under *Utah Restaurant,* then, we begin by analyzing the standing of the members of the Society. Here, any member of the Society, like any member of the public, had the right to appear before the district court and assert a claim of access to the court proceedings, to the transcripts, and to the memorandum decision. Had any individual done so, he or she would have had standing to challenge the closure and sealing. Therefore, when the Society appeared on behalf of its members to assert an access interest and to contest the closure, the first part of the two-part *Utah*

*Restaurant* test for associational standing was met.

The second associational standing requirement is that the nature of the claim and the relief sought must not require the individual participation of each injured party. The Society appeared before the district court and argued that Lafferty's competency proceedings should be open. The relief it sought would have benefited all its members and vindicated their access interest. Neither the claim nor the relief sought required the individual participation of the Society's members. Instead, the association was fully capable of presenting to the district court the factual and legal access issues about which its members were concerned. We therefore conclude that the Society met the second associational standing requirement and had standing to represent its members' interests before the district court.

The Society's standing below satisfies the first requirement for standing to petition this Court. Its access interest was harmed by the district court's closure orders. Therefore, the Society is aggrieved by the court's ruling adverse to it and, by challenging that rule here, satisfies the second appellate standing rule we have imposed for Rule 65B(b)(2) petitions. Finally, by having appeared and presented its claims to the district court, the Society has provided this Court with a basis upon

have disposed of the issue before us today, albeit without reference to our standing cases and without analysis. In that case, the trial court proposed to close a preliminary hearing in a criminal matter at the urging of both the prosecution and the defense. A hearing was held on whether the closing should take place. Kearns-Tribune Corporation, publisher of *The Salt Lake Tribune,* had been informed of the hearing and appeared through counsel to oppose the closure. The trial judge heard argument and then ordered the hearing closed. The courtroom was cleared, and the hearing held. Kearns-Tribune then filed with this Court a petition for an extraordinary writ, seeking to vacate the closure order. This Court held that Kearns-Tribune "clearly has standing to contest the closure," relying on *KUTV, Inc. v. Conder,* 668 P.2d 513, 517 (Utah 1983).

There is no difference between the posture of the Society in the present proceeding and that of Kearns-Tribune in the *Kearns-Tribune* case. In both, all either petitioner did was appear and

contest the closing, asserting a generalized right of access. This was sufficient to give Kearns-Tribune standing; today, we hold that it suffices for the Society, and others, too.

**10.** Some courts add a third requirement, taken from the 1977 case of *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The third prong of this associational standing test requires that the interests which the association seeks to protect are relevant to the organization's purpose. This requirement was not mentioned in *Utah Restaurant,* but it is certainly consistent with the facts there, in *Olson v. Salt Lake City School District,* 724 P.2d 960 (Utah 1986) (Utah Taxpayers Association held to have associational standing), and in the present action. While we note that this action meets this prong of the associational standing test, we do not feel compelled to adopt or to reject this requirement in Utah at this time.

which to review the district court's action. These actions satisfy the third appellate standing rule we have adopted here. For the foregoing reasons, this Court has jurisdiction to consider the Society's petition.

■ Next, we analyze the standing of the petitioners who seek to intervene. We first consider KUTV. KUTV appeared on its own behalf and moved the district court to release the transcripts of the second and third competency proceedings.[11] Certainly KUTV's affirmative assertion of its access interest gave it a personal stake in the outcome of the proceeding and, therefore, standing before the district court. The fact that KUTV only sought access to the transcripts, and did not attempt to attend any of the competency proceedings, in no way distinguishes its challenge to the district court's rulings from that of the Society. The district court's orders closing the proceedings and sealing the transcripts and the memorandum decision all arose out of the same legal determination—that avoiding public disclosure of the information presented during the proceedings was in the interests of justice and overrode any access interest. Therefore, KUTV's challenge to the sealing of the transcripts amounted to an attack on the district court's fundamental ruling. The district court's ruling to seal the transcripts, which KUTV challenges here, certainly was adverse to that petitioner's interests. Since KUTV is aggrieved by that ruling, it satisfies the second appellate standing requirement. The third appellate standing rule also has been met by KUTV's appearance and presentation of its claims to the district court. Under the authorities discussed above, this would give KUTV standing to seek a writ from this Court to overturn the district court's ruling. Since KUTV has standing here, we grant its motion to be joined as a petitioner. In so doing, we specifically note that its joinder does not interject any new issues into this case.[12]

■ Finally, we consider the petition to intervene of John Edwards, Ernest J. Ford, and Michael Youngren. These individual journalists took no steps to assert their right to access, to make this interest concrete. Therefore, the journalists cannot show that they had a personal stake in the outcome of the closure proceedings different than that of any other member of the press or public. That generalized interest, as we have discussed above, is insufficient to confer standing upon them at the district court level. The journalists' failure to satisfy this initial standing requirement for a Rule 65B(b)(2) petition is determinative of the standing question here and precludes

11. On April 2, 1985, Patrick A. Shea, Esq., filed a motion for the release of the transcripts. The first page of the motion lists Shea as the attorney for the Society of Professional Journalists, as does the signatory line. However, the motion states that "the undersigned, on behalf of the Utah Society of Professional Journalists, KSL Television, KTVX Television, KUTV Television, The Ogden Standard Examiner, The Kearns Tribune, The Deseret News, KSL Radio, KALL Radio, and other members of the Society," seeks the release of the transcripts. Certainly, the motion is not as clear as it should be concerning who Shea actually represented. In his dissent, Justice Stewart states that the evidence does not indicate that KUTV sought to attend the proceedings or to obtain the transcripts. He, therefore, relies on the motion's listing of Shea as the Society's counsel and disregards the statement within the motion as being indicative of actual representation. We conclude, however, that Shea's statement that he was acting "on behalf of" both KUTV and the Society, among others, means just that. Although the question is not free from doubt,

therefore, we consider this motion to have been presented by Shea in his capacity as counsel for each named entity. In any event, since we conclude that the Society itself had standing, the standing of KUTV is not essential to our conclusion. *See infra* note 12, at 1176.

12. Although we grant KUTV's motion to be joined as a petitioner, its joinder is unnecessary to our resolution of this dispute. Its interests are identical to those of the Society, which acts on behalf of all its members, including KUTV. Moreover, its joinder is unrelated to and not required by our decision to grant associational standing to the Society. *See, e.g., Armory Park Neighborhood Ass'n v. Episcopal Community Services in Arizona,* 148 Ariz. 1, 712 P.2d 914 (1985); *Conestoga Pines Homeowners' Ass'n, Inc. v. Black,* 689 P.2d 1176 (Colo.App.1984) (associations held to have standing in each case without any member's participation in action); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

any further review under the other appellate standing rules. Their petition to intervene is denied.

■ We turn at last to the merits of the case. Should the public, including the press, be granted access to pretrial proceedings held to determine the competency of an accused to stand trial? Petitioners first argue that the trial court's closure of the proceedings constituted an improper prior restraint on speech prohibited by the first amendment to the United States Constitution and the free speech and press provisions of article I, section 15 of the Utah Constitution. This argument is without merit. In *Kearns-Tribune Corp. v. Lewis*, 685 P.2d 515 (Utah 1984), we noted that closure of pretrial proceedings does not involve a prior restraint upon the petitioners' rights to freely express information or opinions and therefore is not properly characterized as an issue involving the petitioners' rights to free speech. *Id.* at 522–23 (citations omitted).

■ Petitioners next contend that the trial court's order was improper in view of this Court's recognition of a public right of access to criminal trials under the guarantees of the first amendment to the United States Constitution and article I, section 15 of the Utah Constitution. *See Kearns-Tribune Corp. v. Lewis*, 685 P.2d at 518–22. In *Kearns-Tribune*, we were asked to extend that right of access to preliminary hearings. There, we analyzed the conflicting considerations and concluded that the right depended upon the nature and purpose of the proceeding in issue. *Id.* This analysis led us to hold that preliminary hearings should be open. However, we also held that because a defendant's right to a fair trial prevails over the public's right of access, preliminary hearings in criminal cases may be closed when access poses "a realistic likelihood of prejudice" to

an accused's right to a fair trial. *Id.* These considerations also apply to determining whether the right of access recognized in *Kearns-Tribune* should now be extended to pretrial competency proceedings in criminal cases.

We note first the importance of public access to the criminal process. As the New Jersey Supreme Court noted in *State v. Williams*, 93 N.J. 39, 459 A.2d 641 (1983),

> In addition to kindling public misperception and eroding public confidence, closure of significant pretrial proceedings perpetuates general ignorance and cuts off public knowledge necessary to a full understanding of the criminal justice system.

93 N.J. at 54, 459 A.2d at 649 (quoted in *Kearns-Tribune Corp. v. Lewis*, 685 P.2d at 521). As noted earlier in relation to petitioners' standing, *Kearns-Tribune* endorses the presumption that significant criminal pretrial proceedings will be open to the public. Is there anything about the special purpose of a pretrial criminal competency proceeding that overcomes this presumption and warrants closure of all such proceedings? Having considered the purpose and nature of the proceeding, we conclude that there is not.[13]

It is true, as the State argues, that an accused's ultimate guilt or innocence of the crime charged is not in issue at a pretrial competency proceeding. Instead, the court's task is limited to determining whether the accused has sufficient mental capacity to assist with the preparation of a defense and whether the accused understands the nature of the offense charged and the punishment specified for that offense. Utah Code Ann. § 77–15–2 (1982).

The determination made at such a competency proceeding nonetheless involves issues of fundamental importance to the

---

**13.** The presumption of openness we recognize here is limited to competency proceedings in criminal cases; the right of access is grounded upon the public's interest in the criminal justice system. We recognize that the proceedings held here were technically civil in nature, since they were held under authority of section 64–7–36, which also applies to involuntary civil commit-

ments. However, the holding in this case should not be construed as suggesting that any presumption of openness applies to civil commitment proceedings. Our holding today applies only to competency proceedings that are held in the course of a criminal prosecution and are necessitated by section 77–15–2 of the Code.

criminal process. At common law, an accused could not be tried while insane, even if sane at the time of the crime. This rule has been codified in a number of jurisdictions, including Utah, and is grounded on the premise that it is unfair to try an accused when he is "disabled ... from making whatever defense he may have." 21 Am.Jur.2d, *Criminal Law* § 95, at 222 (1981). In Utah, this rule is contained in section 77–15–1 of the Code, which provides, "No person who is incompetent to proceed shall be tried or punished for a public offense." Utah Code Ann. § 77–15–1 (1982). Given this strong public policy against trying an incompetent person for a criminal offense, it seems plain that the proceeding at which competency is determined is a significant one in the criminal process. The public should be entitled to scrutinize the implementation of this policy, unless strong countervailing considerations warrant closure.

As a general proposition, pretrial competency proceedings present fewer inherent dangers of prejudice than preliminary hearings. As noted above, a competency proceeding focuses narrowly on a defendant's *present* mental capacity, rather than on a defendant's mental state at the time the crime charged was committed. Ordinarily, "[e]vidence relevant and admissible to establish the defendant's [present] capacity to understand the legal proceedings and to assist his attorney would ... reveal little or nothing about his possible guilt of the crimes charged." *Westchester-Rockland Newspapers Corp. v. Leggett,* 48 N.Y.2d

430, 423 N.Y.S.2d 630, 636, 399 N.E.2d 518, 524 (1979); *accord Miami Herald Publishing Co. v. Chappell,* 403 So.2d 1342, 1345 (Fla.App.1981). Accordingly, we hold that, as with preliminary hearings, pretrial competency proceedings in criminal cases may be closed only upon a showing that access raises a realistic likelihood of prejudice to the defendant's right to a fair trial.[14]

There is no apparent reason to distinguish between the factors relevant to closure of a preliminary hearing and closure of a competency proceeding; therefore, we conclude that the steps to be followed by a trial court in either instance are the five set forth in *Kearns-Tribune.* 685 P.2d at 524. These steps are as follows: (i) a closure hearing must be held, and that hearing must be open to the greatest extent possible; (ii) if allegedly prejudicial information must be disclosed during the hearing on the merits, the court may close that hearing only after first attempting unsuccessfully to procure a voluntary nondisclosure agreement among the parties; (iii) the court may close only that portion of the hearing on the merits as is necessary to protect any countervailing interests, such as the accused's fair trial right; (iv) if closure is deemed necessary, the transcript of any closed proceeding should be released as soon as it is possible to do so without prejudice to the interests that justified closure; (v) the order of closure resulting from the closure hearing must be supported by written findings and conclusions.[15] *Id.*

**14.** Petitioners assert that competency proceedings are inherently incapable of prejudicing a defendant's fair trial right because the inquiry does not raise any issues relating to an accused's ultimate guilt or innocence. While we agree that as a general matter there is no reason to expect that evidence pertinent to the guilt or innocence of the defendant would be disclosed at a competency hearing, that assumption may not always be true. *See Westchester-Rockland Newspapers Corp. v. Leggett,* 423 N.Y.S.2d at 643–44 n. 2, 399 N.E.2d at 531 n. 2 (Fuchsberg, J., concurring); Comment, *Balancing Right to Fair Trial Against Statutory Right of Public Access to Court Proceedings After Ganett—Westchester Rockland Newspapers, Inc. v. Leggett, [48] N.Y.2d 430, 399 N.E.2d 518, 423 N.Y.S.2d 630 (1979),* 14 Suffolk Univ.L.Rev. 1403, 1421

(1979). Therefore, we deem it appropriate to grant the trial judge authority to close the hearings when necessary.

**15.** In *Kearns-Tribune,* the Court stated that closure order proceedings must be preceded by notice and hearing. It then said:

> Representative members of the media must receive notice of the motion for closure and, along with other interested parties who seek to participate, must be afforded an opportunity to participate in the proceedings upon the motion to the maximum extent possible.

685 P.2d at 524. Two separate matters are addressed by this language, although elliptically: (i) the need for notice to the media; and (ii) the right of those appearing at the hearing to participate. These matters deserve further elabora-

In this case, the trial court closed the competency proceeding without issuing written findings and conclusions supporting that decision. The court merely noted in a minute entry after the closure hearing that the prosecutor was indifferent to opening the competency proceedings, that "the defendant objects to the press or spectators being present in the hearing," and that counsel for petitioners "argues in support of an open hearing." The court then concluded that "because of the fair trial aspect the press will not be allowed in the courtroom." This minute entry does not satisfy the *Kearns-Tribune* requirement that the court explain its reasons for ordering closure. While we understand that a trial judge may be reluctant to disclose any sensitive information in his or her findings on closure, there must be a showing that the matters in issue in the competency proceeding, if disclosed, pose a substantial risk of endangering an accused's fair trial rights. We do not perceive that any undue burden will be placed upon a trial judge by requiring that the findings be sufficiently complete to justify the closure decision, to permit the respective parties to determine whether an appeal on a writ petition is justified, and to allow for meaningful review.[16] Of course, nothing we say today should be construed to prevent a trial judge from supplementing adequate public findings concerning closure with more detailed findings which are sealed from public view. We conclude, therefore, that the trial court abused its discretion in failing to hold appropriate closure hearings respecting closure of the first two competency proceedings and in failing to enter findings and conclusions explaining the decision to close the competency proceedings.

The writ is granted. The trial court is directed to reconsider whether, in light of Lafferty's trial, any danger of prejudice to his fair trial or retrial rights has passed so that the transcripts and memorandum decision may be released. In considering this issue, the district court is directed to hold a hearing concerning whether the order sealing those documents should be vacated and to enter detailed findings and conclusions supporting its ultimate decision.

Lafferty must be joined as a party to any proceedings to reconsider the release of the transcripts and memorandum decision. He

---

tion. The language concerning notice to the media was not intended to require a court faced with a closure motion to seek out members of the media and to give them notice before proceeding on the motion, without regard to whether any interest in the matter had been shown. It means only that notice must be given to members of the media who have made a wiitten request for such notice in advance. To protect against a claim that proper notice was not given, a party seeking closure should serve advance written notice of a closure motion upon the opposing party, the court, and any media representatives who have requested such notice. This should satisfy the notice requirement of *Kearns-Tribune*. We note, however, that interested persons must file advance written notice of an interest in a particular case before they are entitled to notice of any closure proceedings. Merely filing with the clerk of the court a blanket notice that purports to assert an interest in any case in which a closure motion may be filed is not sufficient to obligate the parties to provide notice to the interested persons.

Advance written notice also will serve to promote the real reason for the notice requirement—encouraging participation in the closure proceedings by any interested parties, including members of the public and the media. The purposes of such participation are to assure that the issues pertinent to closure are fleshed out and to minimize the likelihood of collusive closure motions. To that end, *Kearns-Tribune* does not limit participation in the closure hearing to those receiving formal notice; instead, it states that members of the media and "other interested parties" are to be permitted to participate "to the maximum extent possible." This is consistent with our standing holding today. Any responsible person who wishes to participate in a closure hearing can do so to the extent consistent with orderly court procedures. The filing of a written notice of a closure motion will assure that those truly interested can make themselves aware of the hearing and can appear. Interested persons will be able to inform themselves of the pendency of the motion by the simple expedient of reviewing the court file.

**16.** The dissent argues that we should not reach the merits of petitioners' claims because the record does not include the trial court's sealed memorandum decision supporting its rulings on closure. However, petitioners' claims do not challenge the trial court's reasons for closing Lafferty's competency proceedings or sealing the transcripts and memorandum decision. *See infra* n. 17, at 1180. Therefore, the reasons for the court's closure orders are not relevant to or necessary for our ruling in this matter.

has a significant interest in assuring that his fair trial or retrial rights are protected. He had the opportunity to be heard when the trial court initially considered closure, and we think that he must have the same opportunity when the trial court reconsiders its earlier action.[17]

HOWE, and DURHAM, JJ., concur.

STEWART, Associate Chief Justice, dissenting:

I dissent. This case is here on an original petition for an extraordinary writ. The Court holds that the Utah Chapter of the Society of Professional Journalists (Society) has standing to attack the district court's order closing Ronald Lafferty's pretrial competency hearings and sealing the transcripts of those hearings. The Court also holds that the Society may assert a right of access to transcripts of Ronald Lafferty's criminal competency proceedings when the case goes back to the trial court and that the closure of the hearings and the sealing of the transcripts was unlawful because the trial court failed to hold a hearing and to make findings of fact supporting the closure and the sealing.

I submit the Society has no standing in this Court and that the majority opinion is contrary to our case law. Furthermore, I believe that this Court errs in addressing the substantive issue of access since neither the State nor Ronald Lafferty, the real

parties in interest, has been made a party to the proceedings in this Court.[1] Moreover, the Society has not even brought before this Court the trial court's memorandum opinion which was filed in support of its rulings on closure and confidentiality. We do not know, therefore, what the reasons were for the ruling of a very seasoned and able trial judge.[2]

I.

Standing is a jurisprudential doctrine, intended to focus judicial analysis on concrete disputes by requiring that those who seek to litigate a dispute have a direct connection with the dispute to be resolved. Standing doctrine ensures that real, not hypothetical, disputes are adjudicated by parties who have been injuriously affected by the allegedly illegal acts of others. As an academic matter, the substantive issue presented in this case is important; but it is not within judicial power to adjudicate an issue when the petitioner suffers no injury and complains only of an abstract injury. In my view, the conclusion is irresistible that the Society asserts only an abstract, not a real, injury to the rights of access claimed under the First Amendment.

Nothing in the record establishes that any of the individual newsmen who have sought to intervene even attempted to attend the competency hearings or to obtain access to the transcripts of the hearings.[3]

---

17. We disagree with the dissent's arguments that Lafferty should have been made a party to this extraordinary writ proceeding and that petitioners' failure to join him should preclude this Court from adjudicating their claims. Petitioners do not challenge the trial court's reasons for closing Lafferty's competency proceedings. Instead, they challenge the procedures the trial court followed in determining whether to close Lafferty's competency proceedings and to seal the transcripts and memorandum decision. We do not think that Lafferty has a significant interest in defending the court's manner of proceeding. Indeed, we think that respondent adequately defended its procedural decisions. Petitioners also questioned whether the closure of *any* competency proceeding will constitute an improper prior restraint on speech or whether it should involve the consideration of factors different from those weighed in determining whether to close significant pretrial criminal proceedings. While Lafferty might have some

interest in these issues, we do not think it is sufficient to justify his joinder here. So long as Lafferty has the opportunity to voice his concerns about whether *his* competency proceedings should be closed, we think that his interest in being heard will be satisfied.

1. The Attorney General represented the respondent trial judge in the proceedings before this Court. Although the Attorney General also represents the State in its capacity as a party to the proceedings in the trial court, he should have been made a party to the independent proceedings in this Court because the State has a direct stake in the outcome.

2. Clearly, petitioners should have provided for the transmission of that document to this Court.

3. There is no substantial issue of mootness in this case, as the majority holds. *See generally Wickham v. Fisher*, 629 P.2d 896 (Utah 1981).

Appropriately, the majority recognizes that the newsmen do not have standing. The right of access the newsmen assert is wholly hypothetical, and plainly not justiciable. Nor did KUTV, Inc., assert any right of access of its own to the transcripts or to the hearings. It, too, lacks standing.

The majority explains in footnote 11 that KUTV has standing as a result of the fact that the Society's motion in the trial court to release the transcript was made "on behalf of [the Society], KSL Television, KTVX Television, KUTV Television, ... and other members of the Society...." But the majority disregards the facts that at the time of the motion none of these entities, including KUTV, was a party to the motion and that the motion was brought solely by the Society. That the Society was the only real party to the motion is indicated by the language of the motion: "[T]he Society of Professional Journalists, Utah Chapter, hereby petitions the Court to issue an extraordinary writ...."

Earlier in its opinion, the majority also states, apparently in support of this same conclusion, that "[i]n addition to the Society, the attorney [representing the Society] also represented KUTV and other parties not present here in moving for the release of the transcripts." In fact, the motion to release the transcripts is signed by Patrick Shea, as "Attorney for Utah Society of Professional Journalists." There is no indication in the motion or elsewhere that Mr. Shea represented KUTV or any of the Society's other members individually. In short, KUTV did nothing on its own to assert whatever rights it may have had.

The fact that the Society was acting "on behalf" of its members did not create standing for the Society or for its individual members. Furthermore, if KUTV has standing simply because the Society's motion stated that it was acting "on behalf" of KUTV and other members of the Society, the three individual newsmen who sought to intervene must also have standing for the same reason; yet the majority holds that they do not.

*Jenkins v. Swan*, 675 P.2d 1145 (Utah 1983), and *Kennecott Corp. v. Salt Lake County*, 702 P.2d 451 (Utah 1985), provide no basis for justifying the Society's standing to bring this lawsuit. Since no newsperson sought access to, or was excluded from, the hearing or was denied access to the transcript, none had a right violated. In *Jenkins*, we stated, "In the absence of [a] ... personal adverse impact, [the plaintiff] lack[ed] standing to raise the issue of the constitutionality of the statute." *Jenkins*, 675 P.2d at 1151. The broader "public issue" standing doctrine established by *Jenkins* and *Kennecott* is not applicable here. *Jenkins* and *Kennecott* contemplate that the "public issue" doctrine should be available when no one is able to show a direct adverse impact on herself or himself and no other plaintiff exists who would be more directly affected by the alleged unlawful act. In *Jenkins*, the Court declared: "The Court will deny standing when a plaintiff does not satisfy the first requirement of the analysis" (i.e., "being adversely affected by government actions") if the issue can be raised by someone with a more direct interest in the issue. *Id.* at 1150. *See also Terracor v. Utah Board of State Lands*, 716 P.2d 796, 799 (Utah 1986). We also stated in *Jenkins* that "despite our recognition of this Court's power to 'grant standing where matters of great public interest and societal impact are concerned,' [we] will not readily relieve a plaintiff of the salutory requirement of showing a real and personal interest in the dispute." *Jenkins*, 675 P.2d at 1150.

The Society of Professional Journalists has an even weaker position than the newsmen and KUTV for asserting standing. The Society is not a newsgathering organization. Nevertheless, an association may assert the rights of its members if a two-pronged test is met: "(i) the individual members of the association have standing to sue; *and* (ii) 'the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to the proper resolution of the cause....' " *Utah Restaurant Association v. Davis County Board of Health*, 709 P.2d 1159, 1163 (Utah 1985) (emphasis

added) (quoting *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)). Thus, an association may have standing to represent the rights of its individual members *if "the individual members have standing to sue."* Since the Society's members, including KUTV, did nothing to assert those rights, neither the Society nor KUTV has standing to challenge the trial court's orders. Curiously, the majority specifically holds to that effect with regard to the three newsmen who sought to intervene.

Nevertheless, the majority seeks to avoid the hurdle posed by *Utah Restaurant* by asserting:

> Under *Utah Restaurant,* then, we begin by analyzing the standing of the members of the Society. Here, any member of the Society, like any member of the public, had the right to appear before the district court and assert a claim of access to the court proceedings, to the transcripts, and to the memorandum decision. *Had any individual done so, he or she would have had standing to challenge the closure and sealing.*

(Emphasis added.)

The majority's argument is that the Society's standing is predicated on the hypothetical proposition of what its members could have done to obtain standing, even though they did nothing in that regard. The contention that KUTV attempted to assert its rights is just plainly not supported by the record, as indicated above. The majority's argument simply turns standing doctrine on its head and gives the association greater standing than its members.

*Utah Restaurant Association* was based on the United States Supreme Court case of *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which held that for an association to assert the rights of its individual members, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit," *id.* at 511, 95 S.Ct. at 2211 (citations omitted), and the association must show "that one or more of its members are injured." *Id.* at 515, 95 S.Ct. at 2213. The Court emphasized that the legal basis for standing is real injury to one's legal rights. An association called Home Builders sought prospective relief against a zoning ordinance that allegedly deprived "some of its members of 'substantial business opportunities and profits.'" *Seldin,* 422 U.S. at 515, 95 S.Ct. at 2213 (citations omitted). The Supreme Court denied standing. "The complaint refer[red] to no specific project of any of its members that is currently precluded either by the ordinance or by respondents' action in enforcing it." *Id.* at 516, 95 S.Ct. at 2214. In other words, an association must assert actual specific injuries to one or more of its members, rather than the mere possibility of injury to "some of its members." That has not been done in the instant case.

Nor can I agree that the second prong of *Utah Restaurant* has been met here. Not only must an association allege specific injuries to its individual members in order to satisfy the first requirement of *Utah Restaurant,* but an evaluation of those injuries is necessary for a court to determine if "individual participation of each injured party is indispensible to proper resolution of the cause," under the second associational standing requirement. For example, individual participation may be required if conflicts of interest exist between the members of an association. *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3531.9, at 617 (1984). Because the Society has asserted no specific injury to any of its members, no such determination can even be attempted in this case.

## II.

Furthermore, I submit that the majority errs in adjudicating the rights of other parties who are not even before this Court. The Court holds that there is a public right of access to Lafferty's competency hearings without either Lafferty or the State having been made a party to this adjudica-

tion. It is not a valid answer to say that Lafferty and the State can enter the case when the district court takes this matter up again, if in fact it does. That is a classic case of locking the barn door too late. Petitioners' failure to name State and Lafferty as parties defendant should be enough by itself to prevent this Court from adjudicating petitioners' claim of a public right of access to the competency hearing and the transcripts. Both Lafferty and the State have undeniable interests in this case, yet they are strangers to the adjudication. Lafferty's Sixth Amendment interest may, perhaps, be overborne by the First Amendment interest of the press, but the antecedent question, whether there is a First Amendment right of access in a competency hearing in the first place, is an issue to which he has a basic right to be heard. It is not just the right of the press that is at stake here; it is also the fundamental right of Lafferty and the State to be heard on a matter of great consequence to them, to the courts, and to society. The majority simply sweeps aside the interests of these parties and decides a fundamental constitutional issue as if their absence were wholly immaterial.

### III.

I believe that the majority opinion bends the rules on standing to the breaking point and adjudicates a critical constitutional issue without having before the Court either of the central parties to the case and without bothering to inform itself why an able and experienced trial judge did what he did in full light of *Kearns-Tribune v. Lewis,* 685 P.2d 515 (Utah 1984).

I would dismiss the petition for an extraordinary writ.

HALL, C.J., concurs in the dissenting opinion of STEWART, J.