The **SOCIETY OF PROFESSIONAL JOURNALISTS, HEADLINERS CHAPTER, Plaintiff,**

v.

Gene **BRIGGS, Laray Sadlier, Elbert Steinaker, Jr. and Duane Lamb, Dennis Judd, Daggett County, Lloyd Winward, Marie C. Beckstead, Defendants.**

**Civ. No. 87–C–0714G.**

United States District Court, D. Utah, C.D.

Dec. 29, 1987.

Michael P. O'Brien, D. Miles Holman, for plaintiff.

Kathryn Collard, Stephen G. Morgan, Todd Richardson, for defendants.

MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

In a prior proceeding in this court in which defendants in this action were parties, a settlement was negotiated and

reached and the case was dismissed.[1] Plaintiff was not a party to those proceedings, but seeks to obtain a copy of the settlement agreement executed in that case in the public interest because of the far reaching and serious allegations in that lawsuit involving alleged wrongdoing by public officials.[2] Defendants challenge plaintiff's standing to bring this action and accordingly brought a Motion to Dismiss. Plaintiff has brought a cross Motion for Summary Judgment in which it maintains that it has standing equivalent to any member of the public, that the settlement agreement is a public document by definition under Utah law and that the constitutional right of access to public information is here implicated. Plaintiff's contentions will be discussed in reverse order.

## I. CONSTITUTIONAL RIGHT TO ACCESS PUBLIC DOCUMENTS

■ In *Richmond Newspapers, Inc. v. Virginia,* Justice Stevens noted that the core of the First Amendment is access to information about the operation and functioning of government, 448 U.S. 555, 583–84, 100 S.Ct. 2814, 2830–31, 65 L.Ed.2d 973 (1980) (Stevens, J., concurring). In a later case, Justice Stevens similarly observed that "a claim to access cannot succeed unless access makes a positive contribution to this process of self-governance." *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 518, 104 S.Ct. 819, 828, 78 L.Ed.2d 629 (1984) (Stevens, J., concurring). The settlement in this case undoubtedly involved in some measure the expenditure of public funds, whether by direct payment, by court costs and attorneys fees or by insurance premiums. In circumstances

where public funds are involved, the Supreme Court of Utah has recognized that;

> Inasmuch as the very existence of public institutions depends upon finances provided by the public, it does not strike us as being discordant to reason that the public would want to know, and ought to know, how their money is spent. In regard to the defendant's expressed fears that the exposure of such information will have an adverse effect upon its ability to operate …, it seems to us that there is even a greater potential for evil in permitting public funds to be expended secretly.

*Redding v. Brady,* 606 P.2d 1193, 1196 (Utah 1980). The Utah Legislature also has recognized the public's right of access to documents of a public nature. Thus, in enacting the Archives and Records Service Act, Utah Code Ann. § 63-2-59 *et seq.* (1986), the Legislature articulated and memorialized the following public policy:

> In enacting this act, the Legislature recognizes two fundamental constitutional rights: (a) the right of privacy in relation to personal data gathered by state agencies, and (b) the public's right of access to information concerning the conduct of the public's business.

Utah Code Ann. § 63-2-60(2). Judge Winder of this court recently enunciated the rationale for upholding the constitutional right of public access to information:

> If the government is given the unfettered discretion to decide what information to make available to the press and the public, it has the power to distort the information and hide the truth. The first amendment guarantees of free speech and free press protect our right to freely criticize the government without fear of

---

**1.** Rule 41(a)(2) FRCP Stipulation, Motion and Order of Voluntary Dismissal, *Beckstead v. Briggs, et al.,* C87-23 (August 17, 1987).

**2.** Plaintiff, Marie Beckstead, alleged in her complaint that there had been: (1) a deprivation of her liberty and property interests without equal protection and/or due process of law in violation of the Fourteenth Amendment; (2) a conspiracy and neglect or refusal to prevent wrongs conspired to be done; and (3) a deprivation of her rights under the Constitution and laws of the State of Utah. *Beckstead, supra,* Complaint. Specifically plaintiff alleged that defendants, as

elected and employed officials of Daggett County, "maliciously conspired to and promulgated an official policy, procedure, practice and/or custom, to unlawfully employ the powers of their public offices and employment, to prevent plaintiff Beckstead from holding or exercising the powers and indicia of the office as Daggett County Assessor, to interfere with and obstruct plaintiff Beckstead in the performance of her official public duties as the Daggett County Assessor, and to unlawfully coerce plaintiff Beckstead to resign her duly elected public office as Daggett County Assessor...." *Id.* at 4.

censorship by the government. But censorship in speaking and publishing is not the only form of censorship that must be prevented. The process of filtering information—selectively releasing some information while withholding other information—can be effectively used to prevent criticism and hide mistakes. The first amendment guarantees apply to both forms of censorship.

*Soc'y of Professional Journalists v. Secretary of Labor,* 616 F.Supp. 569, 576 (D. Utah 1985). This court agrees and holds that there is a constitutional right of access to public documents. Assuming that the settlement agreement constitutes a public document, though at the time of negotiation the parties may have bargained for confidentiality as a condition of the agreement,[3] the balance between a bargain of confidentiality and the public's right of access would clearly weigh in favor of disclosure.

The next inquiry, then, is whether the settlement agreement is a public document.

## II. PUBLIC DOCUMENTS

■ Settlement agreements involving public entities have been held to be public documents.[4] While no Utah case has addressed that subject, the Utah Legislature has enacted far ranging laws which appear to cover such documents. The Archives and Records Services Act defines "public records," as follows:

"Public records" means all books, papers, letters, documents, maps, plans, photographs, sound recordings, management information systems, or other documentary materials, regardless of physical form or characteristics, made or received, and retained by any state public office under state law or in connection with the transaction of public business by the public offices, agencies, and institutions of the state and its counties, municipalities, and other political subdivisions. The term "public records" does not include preliminary drafts or personal notes made or received, and retained by the public agency in the ordinary course of business, unless, in the opinion of the State Records Committee, a public interest in subjecting these records to the classification procedures of this act clearly outweighs the public interest in exempting them from classification, and

---

**3.** Defendants emphasize the historical tradition and policy of the law to encourage resolution of disputes through settlement rather than litigation:

> [I]t is the policy of the law to uphold and enforce [compromise and settlement] contracts if they are fairly made and are not in contravention of some law or public policy. This universal rule is applicable in courts of equity as well as in courts of law. The courts have considered it their duty to encourage rather than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims. In pursuance of the policy of law to encourage the settlement of controversies out of court, the courts have treated a party's offer of compromise as an effort to obtain peace rather than as an admission of the validity of another party's claim, and an unaccepted offer of compromise is inadmissible as evidence of such an admission. Similarly, where two parties are engaged in a lawsuit arising out of a transaction which involved other persons, the fact that one party made a compromise with a third person cannot be received in evidence as an admission of the party's liability.

15A Am.Jur.2d, *Compromise and Settlement,* Sec. 5. In the absence of overriding considerations, such as exist in this case, this traditional policy would apply.

**4.** *See Daily Gazette Co. v. Withrow,* 350 S.E.2d 738, 743–44 (W.Va.1986); *Newspapers, Inc. v. Pyzyk,* 13 Med.L.Rptr. 2004, 2005 (Wis.Cir.Ct., October 15, 1986); *Register Division of Freedom Newspapers, Inc. v. County of Orange,* 158 Cal. App.3d 893, 901, 205 Cal.Rptr. 92, 96–7 (Cal.Ct. App.1984) (settlement documents in tort claim by county jail inmate alleging sheriff's negligence); *Dutton v. Guste,* 395 So.2d 683, 684–85 (La.1981) (settlement documents in action by state against architects and engineers concerning design and construction of a public building); *In re Geneva Printing Co. v. Village of Lyons,* 7 Med.L.Rep. 1220, 1222–24 (N.Y.Sup.Ct. March 25, 1981) (settlement agreement in disciplinary proceeding by municipality against public employee); *News & Observer Publishing Co. v. Wake County Hospital System,* 55 N.C.App. 1, 12–13, 284 S.E.2d 542, 549 (1981) (settlement documents in actions by medical professional associations against quasi-public county hospital system for wrongful termination of agreements), *petition denied,* 305 N.C. 302, 292 S.E.2d 151, *cert. denied* and *appeal dismissed,* 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982).

unless the records, or the data, or class of data in these records is otherwise controlled by law.

Utah Code Ann. § 63–2–61(1). Similarly, the Public and Private Writings Act, provides that "[e]very citizen has a right to inspect and take a copy of any public writing of this state except as otherwise expressly provided by statute." Utah Code Ann. § 78–26–2 (1987). The Act divides public writings into four categories, including;

(4) Public records, kept in this state, of private writings, which such records may be made by handwriting, typewriting, or as a photostatic microphotographic, photographic, or similar reproduction of such private writings.

Utah Code Ann. § 78–26–1, and provides for public access:

Every public officer having the custody of a public writing which a citizen has the right to inspect is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor.

Utah Code Ann. § 78–26–3.

It is clear that an action in state court would lie, based upon these laws, because the statutes render the settlement agreement here a public document subject to the terms of the enactments. The statutes might be thought of as state freedom of information laws. This court recognizes, as did Judge Winder, that "[t]he Constitution is not, however, a Freedom of Information Act,"[5] and that at certain times public access properly can be limited. However, since in this case the document is a public document, and a federal constitutional right is here implicated, i.e., the right of access to public documents, the case also is properly brought in this court, unless for some reason plaintiff has no standing to bring such an action.

### III. ASSOCIATIONAL STANDING

▮ Plaintiff claims that it has standing as an association to bring this action. The Supreme Court has articulated a three-prong test for determining whether an association has standing to sue in behalf of its members, thusly: (1) the individual members of the association have standing, (2) the claim or relief sought does not require individualized participation by the members of the association, and (3) the interests the association seeks to protect are germane to its purpose. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975). This court holds that the prerequisites to "associational standing" are present in this case.

As to the first prerequisite, individual members of the plaintiff association have asserted injury in fact by reason of defendants' refusal to provide access to the settlement documents in the *Beckstead* case.[6] The Utah Supreme Court adopted the first two prongs of the *Hunt* test for determining whether an association can represent its members in state court judicial proceedings. *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1163 (Utah 1985) (quoting *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed. 2d 343 (1975)). Recently the Utah Supreme Court pointed out that any member of this plaintiff association would have standing to gain access to certain court documents:

[A]ny member of the Society, like any member of the public, had the right to appear before the district court and assert a claim of access to the court proceedings, to the transcripts, and to the memorandum decision. Had any individual done so, he or she would have had standing to challenge the closure and sealing. Therefore, when the Society appeared on behalf of its members to assert an access interest and to contest the closure, the first part of the two-part *Utah Restaurant* test for associational standing was met.

---

**5.** *Soc'y of Professional Journalists v. Secretary of Labor,* 616 F.Supp. at 577.

**6.** Statement of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment; Affidavit of Paul Rolly; Affidavit of Jack Ford.

**1312**

*Soc'y of Professional Journalists v. Bullock,* 743 P.2d 1166, 1175 (Utah 1987). Manifestly, the individual members of the plaintiff association would have standing to enforce their constitutional right of access to the public documents requested in this case.

The second prerequisite or prong of "associational standing," was addressed by the Utah Supreme Court in *Bullock* wherein the court stated:

> [T]he nature of the claim and the relief sought must not require the individual participation of each injured party. The Society appeared before the district court and argued that ... [the court] proceedings should be open. The relief it sought would have benefited all its members and vindicated their access interest. Neither the claim nor the relief sought required the individual participation of the Society's members. Instead, the association was fully capable of presenting to the district court the factual and legal access issues about which its members were concerned. We therefore conclude that the Society met the second associational standing requirement and had standing to represent its members' interests before the district court.

743 P.2d at 1175.[7] This condition is also met in the case at bar. Here, plaintiff association requests injunctive relief, requiring defendants to provide plaintiff with a copy of the settlement documents. "[I]t can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Nat'l Collegiate Athletic Ass'n v. Califano,* 622 F.2d 1382, 1392 (10th Cir. 1980) (quoting *Warth v. Seldin,* 422 U.S. at 515, 95 S.Ct. at 2213). No claim is here made that individual participation by the members of the association is required to obtain the relief sought. To the contrary, it is apparent that the relief sought by the association will inure to the benefit of its individual members.

The third prong, that the interests the association seeks to protect be germane to its purpose, is also met. It is clear from the uncontradicted statements of two officers of the plaintiff association that the purpose of the association is to promote and protect first amendment freedoms associated with gathering and disseminating news.[8]

Based upon the foregoing analysis, this court concludes that plaintiff has associational standing to represent its member's interests in this case. Accordingly, defendants' motion to dismiss is denied and plaintiff's motion for summary judgment is granted. No costs or attorneys fees are awarded. Counsel for plaintiff is directed to prepare and submit to the court a form of Judgment consistent with this Memorandum Decision and Order after complying with local Rule 13(e) of this court.

IT IS SO ORDERED.

---

7. The Utah Supreme Court did not feel compelled to adopt or reject the third prong of the *Hunt* test, that the interests the association seeks to protect be germane to its purpose, although the action before it met that prong. *Id.* n. 10.

8. Statement of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment; Affidavit of Paul Rolly; Affidavit of Margaret St. Claire.