COMBINED COMMUNICATIONS COR-PORATION OF OKLAHOMA, INC., d/b/a KOCO–TV, an Oklahoma corporation, Gannett Satellite Information Network, Inc. d/b/a USA Today, a Delaware corporation, and Gannett News Service, Inc., a Delaware Corporation, Plaintiffs,

v.

Lawrence L. BOGER, Edna Mae Phelps, Austin Kenyon, Edwin Ketchum, Ed Malzahn, John W. Montgomery, Robert D. Robbins, Carolyn Savage, Jack D. Craig, and L.E. Stringer, Defendants.

No. CIV–88–643–B.

United States District Court, W.D. Oklahoma.

July 20, 1988.

Gretchen A. Harris, Anne M. Moore, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City,, Okl., for plaintiffs.

Kenneth N. McKinney, Kenneth R. Webster, Dawn M. Northup, McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for defendants.

## ORDER GRANTING MOTION TO DISMISS

BOHANON, District Judge.

This matter is before the court for consideration of (1) a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) a Motion for Protective Order, both filed by the defendants Lawrence L. Boger, Edna Mae Phelps, Austin Kenyon, Edwin Ketchum, Ed Malzahn, John W. Montgomery, Robert D. Robbins, Carolyn Savage, Jack D. Craig, and L.E. Stringer ("OSU defendants"). These defendants are the President and members of the Board of Regents of Oklahoma State University ("OSU"). Having heard arguments on these motions, on June 22, 1988, the court hereby grants the Motion to Dismiss, making moot the Motion for Protective Order.

This case involves a Letter of Official Inquiry issued by the National Collegiate Athletic Association ("NCAA") which sets forth a number of alleged violations of NCAA rules by the athletic program of OSU. Plaintiffs, Combined Communications Corporation of Oklahoma, Inc., Gannett Satellite Information Network, Inc., and Gannett News Service, Inc., are corporations operating an Oklahoma City television station (KOCO–TV, "Channel 5") and a newspaper ("USA Today").

The plaintiffs contend that the defendants violated their rights under the United States Constitution and Oklahoma law by refusing to disclose to them the contents of the NCAA Letter of Official Inquiry. The

plaintiffs' Amended Complaint asserts two causes of action: (1) a claim under 42 U.S.C. § 1983 that the OSU defendants' refusal to provide access to the NCAA letter received on or about April 11, 1988, has deprived the plaintiffs of "their constitutional right of access to a public document for purposes of gathering and reporting news of significant public concern" under the First and Fourteenth Amendments; and (2) a pendent state claim that the defendants' refusal to provide access to this letter violates the plaintiffs' rights under the Oklahoma Open Records Act, 51 Okla.Stat. § 24A.[1] Based on the Eleventh Amendment of the United States Constitution, the state law claim was dismissed before the June 22 hearing. Plaintiffs seek a declaratory judgment that the defendants have violated their First and Fourteenth Amendment rights. They further seek an injunction ordering the defendants to provide them with access to the NCAA letter.

### *OSU Defendants' Motion to Dismiss*

The OSU defendants have filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They argue that the plaintiffs have failed to state a claim on which relief can be granted because the First Amendment does not confer on the press or the public the right of access to the kind of document sought here.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled facts as true. *Swanson v. Bixler*, 750 F.2d 810 (10th Cir.1984). All reasonable inferences from these facts must be indulged in favor of the plaintiff, and the pleadings must be liberally construed. *Id.* at 813; *Gas–A–Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102 (10th Cir.1973). Such motions must be denied unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Swanson*, 750 F.2d 810. Mindful of these principles, the court proceeds to examine the First Amendment claims challenged by the defendants.

Plaintiffs contend that the OSU defendants acted under color of state law in denying plaintiffs access to a public document, the NCAA letter. To state a valid claim under 42 U.S.C. § 1983, plaintiffs must allege and prove the existence and violation of a recognized constitutional right. *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, the dispositive question is whether there is a recognized First Amendment right of access to the NCAA letter.

The First Amendment to the United States Constitution provides that "Congress shall make no law abridging the freedom of speech or of the press...." Based on this language, the United States Supreme Court has refused to recognize a special right of access for the media to gather news. *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). In its opinion, the Court held that a television station had no First Amendment right of access to a county jail over and above the access provided to the general public. The Court declared that, in its prior decisions, it had "never intimated a First Amendment guarantee of a right of access to all sources of information within government control." *Id.* at 9, 98 S.Ct. at 2593–94. The Court explained that "[t]here is no discernable basis for a constitutional duty to disclose...." *Id.* at 14, 98 S.Ct. at 2596. Further, "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." *Id.*, quoting Stewart, *Or of the Press*, 26 Hastings L.J. 631, 636 (1975). The Court, in conclusion, recog-

---

1. The Complaint in this case included the President and Members of the Board of Regents of The University of Oklahoma as defendants ("OU defendants"). Thereafter the plaintiffs and the OU defendants reached an agreement whereby the OU defendants submitted to the court an NCAA Letter of Official Inquiry and a summa- tion of the letter. The letter was reviewed *in camera* by the court. After the court determined that the summation was a fair representation of the letter, an order dismissing the OU defendants from this action was filed on June 21, 1988.

nized that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins*, 438 U.S. at 15, 98 S.Ct. at 2597.

The plaintiffs rely on two post-*Houchins* Supreme Court decisions: *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and *Press Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). In both of these cases the court found a right of access to certain criminal proceedings under the First Amendment. The Court, in both cases, stressed that its holdings should not be interpreted as establishing a right of access to all governmental proceedings or all information within the government's control. Instead, the Court stated that in order to determine whether a First Amendment right of access exists as to particular kinds of proceedings and information, one must undertake a two-tiered analysis, asking: (1) "[w]hether the place and process has historically been open to the press and general public;" and (2) "[w]hether public access plays a significant positive role in the functioning of the particular process in question." *Press Enterprise*, 478 U.S. at 8, 106 S.Ct. at 2740; *see also Richmond Newspapers*, 448 U.S. at 597–98, 100 S.Ct. at 2838–39 (Brennan, J., concurring in judgment). In both of these cases, the Court's conclusion that the First Amendment conferred upon the public and press the right of access to criminal trials and preliminary hearings was based on its finding a deep-rooted common-law tradition of public access to these proceedings and on its conclusion that such public access was and is essential to the proper functioning of these proceedings. *Press Enterprise*, 478 U.S. at 9–11, 106 S.Ct. at 2741–42; *Richmond Newspapers*, 448 U.S. at 564–75, 100 S.Ct. at 2820–26.

The Third Circuit has addressed the question of public access in two significant cases, *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3rd Cir.1986) and *First Amendment Coalition v. Judicial Inquiry and Review Board*, 784 F.2d 467 (3rd Cir.

1986). In *Capital Cities*, the Third Circuit evaluated the two complementary considerations and held that the plaintiff's complaint was insufficient based on the *Press Enterprise* analysis because it merely alleged a demand for and a refusal of access to the public records. The court found that the plaintiff had not pleaded, nor offered to prove, the existence of a tradition of public access to administrative records. The court further stated that plaintiff would not be able to show that public access had the "favorable judgment of experience" which would give rise to a First Amendment right based on the *Press Enterprise* considerations. Because the plaintiff could not satisfy these tests of experience and logic, no First Amendment right attached. *Capital Cities* at 1175.

In *First Amendment Coalition*, the court denied access to records of the Judicial Inquiry and Review Board's investigatory proceedings. The Board conducted hearings and made recommendations to the Pennsylvania Supreme Court concerning disciplinary action of judges. Only in cases where disciplinary action was recommended to the court would the records of the Board be made public. After evaluating the "unique history and function of the Judicial Review Board," the court found history did not support access to the solicited records.

■ Applying the two complementary considerations of a historical tradition of access and a significant positive role that such access would play in the process in question, the court finds that there is no tradition of access in this state to the NCAA letter and that such access would not play a positive role in the NCAA and OSU investigations. Having failed these tests of experience and logic, a qualified First Amendment right of public access to the NCAA letter does not exist.

Contrary to plaintiffs' contention, the voluntary production of NCAA Letters or summaries of those letters by The University of Texas, Texas A & M University and The University of Oklahoma do not create any tradition of public access to OSU's NCAA Letter of Official Inquiry. Plaintiffs have not pleaded and cannot prove the required "tradition of public access" neces-

sary to find a First Amendment right of access to the NCAA letter.[2]

The NCAA letter contains only allegations of wrongdoing which the University is required to investigate to determine their truth. Plaintiffs have failed to show how access to the letter would play a positive role in furthering the necessary investigation being conducted by the NCAA and OSU.[3]

In an effort to convince the court that a First Amendment right of access to the NCAA letter exists, plaintiffs have cited several cases in which courts found a First Amendment right of access to attach. In these cases, various courts have found First Amendment rights of access to criminal trials, civil trials, presidential press conferences, administrative proceedings, and settlement agreements. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3rd Cir.1984); *Society of Professional Journalists v. Briggs*, 675 F.Supp. 1308 (D.Utah 1987); *Society of Professional Journalists v. Secretary of Labor*, 616 F.Supp. 569 (D.Utah 1985); *Cable News Network v. American Broadcasting Companies*, 518 F.Supp. 1238 (N.D.Ga.1981).

The court finds these cases to be either distinguishable from the one at bar or unpersuasive in their reasoning. *Society of Professional Journalists v. Secretary of Labor*, 616 F.Supp. at 575–76, and *Cable News Network*, 518 F.Supp. at 1244–45 are based on a finding of a tradition of access not alleged in the case at bar. Although the court in *Society of Professional Journalists v. Briggs*, 675 F.Supp. at 1310 held that there is a First Amendment right of access to public documents, this court finds the reasoning of *Capital Cities* and *First Amendment Coalition* more persuasive and more in line with the Supreme Court's decision in *Houchins* and thus declines to follow that decision.

The court finds that there is no First Amendment right of access to the NCAA Letter of Official Inquiry. Plaintiffs have failed to state a First Amendment claim upon which federal relief can be granted. Accordingly, the OSU defendants' Motion to Dismiss is granted.

**2.** In their brief in response to the defendants' Motion to Dismiss, the plaintiffs maintain that the fact that several other universities have disclosed similar letters of inquiry combined with the Oklahoma Legislature's enactment of the Open Records Act establishes a tradition of access sufficient to satisfy the first tier of the *Richmond Newspapers* and *Press Enterprise* analysis. In light of this tradition, the plaintiffs contend that they should be allowed to conduct discovery "in order to determine the nature of the information currently withheld, the historical access of such information, and the importance of the information to the governing functions of the universities involved."

For several reasons, the court does not agree. First, the conduct of the universities and the enactment of recent legislation does not constitute the kind of deep-rooted tradition found in *Richmond Newspapers* and in *Press Enterprise. Cf. Capital Cities*, 797 F.2d at 1175. Moreover, since no allegations of such a tradition are set forth in the plaintiffs' Complaint, this contention cannot be considered in ruling on the defendants' Motion to Dismiss. Further, in the Court's opinion, *Richmond Newspapers* and *Press Enterprise* do not entitle every plaintiff asserting a right of access to information in the

government's possession to conduct discovery on the issues of the existence of a historical tradition of access and on the functional importance of such access. To so hold would be to approve the kind of case-by-case analysis of every First Amendment claim of access which was expressly rejected by the Supreme Court in *Houchins.*

**3.** The plaintiffs do contend that the disclosure of violations of NCAA rules is in the public interest. However, it does not follow from this that disclosure of the contents of the NCAA Letter of Inquiry, which at most states allegations, not findings of wrongdoing, is in the public interest. Certainly when no ultimate findings of violations have been made, there is no public interest in disclosure. In such instances, there is also a strong interest in safeguarding the reputation of those as to whom the allegations may not be substantiated. *Cf. Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979) (noting that one reason for the secrecy of grand jury proceedings is to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule").